56 So.2d 647

**RICE et al. v. SINCLAIR REFINING CO.**

**5 Div. 523.**

Supreme Court of Alabama.

Jan. 17, 1952.

Walker & Walker, Opelika, for appellants.

Denson & Denson and Yetta G. Samford, Jr., Opelika, for appellee.

STAKELY, Justice.

The question for decision is whether Sinclair Refining Company, complainant in the lower court and appellee here, is entitled to purchase for $9,750 a certain filling station property in Auburn, Lee County, Alabama, under the option provisions of a lease made to it by John Edwin Rice and his wife Gussie Y. Rice, respondents in the lower court and appellants here. The question is presented by the decree of the court in overruling the demurrer of appellants to a bill for specific performance filed by the appellee. The appeal here is from this ruling on demurrer.

The allegations of the bill show the following. On January 8, 1936, the parties entered into a written contract, whereby appellants leased certain property in Auburn, Lee County, Alabama, to appellee for a period of ten years, with an option set forth therein to extend the term of the lease for an additional term of five years and with an exclusive purchase option "at price of $9,750.00, to be exercised at any time during the granted term of this lease or any extension thereof." The contract provided for the making of certain improvements on the property and the fixing of the date on which the lease term should begin. . Such date was fixed by subsequent written agreement as June 9, 1936. The rental provided for in the lease contract was $70 per month. Under the terms of the lease contract the appellants agreed to erect and did erect on the described lot a gasoline and oil filling and service station according to the plans of the appellee at a cost not to exceed $4,000.

As pertinent to this case we set out Article XIV of the lease contract. "Purchase Option: For the consideration herein named, Lessor hereby gives and grants to

Lessee the exclusive option and privilege of purchasing the leased premises, including all, if any, of lessor's improvements and property thereon, whether real, personal or mixed thereon, free and clear of all liens and incumbrances for the sum of Nine Thousand, Seven Hundred Fifty and No/100th ($9,750.00) Dollars in cash at any time during the granted term of this lease or any extension thereof, provided Lessee shall give Lessor not less than sixty (60) days' notice of Lessee's election to exercise this purchase option. Upon Lessee's giving such notice, Lessor shall comply with the requirements of the second succeeding article, entitled, 'Conveyance Requirements.' "

We also set out so much of Article XVI as we deem pertinent to the present controversy.

"Conveyance Requirements: The giving by Lessee of notice of the exercise of any purchase option hereinbefore granted, shall fix or determine the right of Lessee to purchase the property included in the option, which Lessee elects to exercise and the obligation of the Lessor to sell the same. Lessor shall furnish, free of expense to Lessee, within fifteen (15) days after the receipt of this notice, a complete abstract of title certified from title in the Government, Title Statement, or Title Guaranty Policy prepared and issued by a financially responsible title abstract company * * * showing good merchantable title in Lessor as of a date not earlier than the date of said notice. A reasonable time will be allowed Lessee to examine said abstract or other evidence of title, and if the same does not show good merchantable title in Lessor, a reasonable time will be allowed Lessor to cure defects and clear the title preparatory to delivery of deed and any other instruments required to effect the transfer and conveyance.

"Upon acceptance by Lessee of said title and payment to Lessor of the purchase price herein specified, Lessor shall convey to Lessee, or its nominee, by general warranty deed a fee simple title in and to said real estate and the appurtenances thereto belonging, free and clear of all liens, encumbrances, and charges of whatsoever character with release of dower, curtesy, homestead and all statutory rights; and shall also deliver to Lessee, free of expense to Lessee, such abstract or other evidence of title showing good merchantable title to said premises in Lessor at the time of the delivery of the deed.

\* \* \* \* \* \*

"If at the time of purchase there shall be a valid mortgage, trust deed, or like encumbrance against said premises or any part thereof, which cannot be then paid and satisfied without payment of penalty or bonus, the amount of indebtedness evidenced by such instrument shall be withheld by Lessee from the purchase price and conveyance shall be made subject to said indebtedness, Lessee assuming payment thereof."

On January 26, 1938, the same parties entered into a written agreement which recited that the lessee desired the lessors to construct an additional wash room or stall on the premises for the purpose of washing and servicing automobiles according to its plans at a cost to lessors of an amount not exceeding $800. The lessors agreed to do this and it was stipulated that the monthly rental under the lease would amount to $77 per month, the increase of rental to become effective when the lessors completed the contemplated improvement, the effective date to be determined by subsequent memorandum.

The aforesaid agreement of January 26, 1938, contains the following provisions: "It is further understood and agreed by and between the Lessors and Lessee that the terms, covenants, conditions and obligations imposed upon Lessors and Lessee by said original lease agreement, bearing date of December 28, 1935, shall in no way be altered or changed, or the rights and privileges of Lessors and Lessee in any way prejudiced by the execution of this agreement except as herein expressly set forth, and shall remain in full force and effect and binding upon each of the parties hereto as if this agreement was never entered into, so long as said terms, covenants and conditions do not conflict with the covenants of this supplemental agreement."

On June 11, 1938, an agreement was signed by the lessors signifying that the additional improvements had been completed on May 15, 1938, and the increased rental was to begin on that date.

On December 27, 1945, the lessee exercised its option to extend the term of the lease for an additional period of five years to June 8, 1951.

On February 8, 1951, the lessee served on lessors a notice referring to the lease between the parties dated December 28, 1935. The notice recites that the lease contains an option in favor of the lessee "of purchasing the demised premises and improvements at any time during the term or extension thereof for the sum of $9,750.-00 in cash". We set forth the following provisions of the notice.

"This is to notify and advise you that the undersigned, Sinclair Refining Company, elects to, and does hereby exercise, the option contained in said lease of December 28, 1935, to purchase for the sum of Nine Thousand Seven Hundred Fifty and No/100ths ($9,750.00) Dollars in cash, the demised premises and improvements located thereon described as follows: (Here follows description of the property.)

"You are further notified, that the undersigned stands ready and willing to comply with all the terms and conditions of said purchase option upon it imposed, upon your complying with all the terms and conditions of said purchase option upon you imposed;

"And you are further notified that pursuant to the obligations imposed upon you under the terms and conditions of Article XVI (Conveyance requirements) of said lease of December 28, 1935, you are to furnish the undersigned a complete abstract of title of said premises, compiled, extended and certified down to the date hereof, showing fee simple title, without liens or encumbrances, vested in you. In lieu of furnishing an abstract of title, it will be satisfactory for you to furnish a title guaranty policy issued by a title insurance company acceptable to the undersigned. In the event you are unable to furnish a satisfactory abstract of title or

title insurance policy, the undersigned will employ an attorney of its choice to examine the public records provided you will pay a reasonable amount of such attorney's fee.

"Upon receipt of this notice, please advise H. P. Ragland, Attorney, Sinclair Refining Company, Post Office Box 1710, Atlanta, Georgia, whether you will furnish an abstract of title or title insurance policy of the character above mentioned or whether you will pay a reasonable attorney's fee, covering title examination by an attorney of the undersigned's choice."

The bill thereupon alleges in substance that upon receipt of said notice and on towit March 1, 1951, the respondents pursuant to the terms of Article XVI of said contract or lease prepared an abstract of title to the premises involved and mentioned in the contract or lease and delivered the same to the attorneys for complainant in Opelika, Alabama, but failed to carry out any of the other obligations imposed upon them by the terms of Article XVI of the contract or lease, but on the contrary on March 5, 1951 informed and notified complainant through their attorneys of Opelika, Alabama, that they declined to comply with complainant's said demand that they convey said property in response to the aforesaid notice and terms of said contract or lease.

On March 22, 1951, lessors were served with another notice from lessee. This notice insisted upon any and all rights under the previous notice, repeated the lessee's then determination to exercise the option to purchase "the property, rights and title mentioned and described in said lease" and which by the terms of said lease "you agreed to convey to said Sinclair Refining Company". The latter instrument notified lessors that "it does now call upon you to comply with all of the terms and conditions of said purchase option" and recited that the lessee "stood ready, willing and able to comply with all the terms and conditions of said purchase option upon you imposed." No reply was made by lessors to this last notice.

The present bill for specific performance was filed by lessee on May 18, 1951, with-

in 57 days after the service of this latter notice.

█ I. Appellants take the position that the option to purchase was not exercised within the terms of the sixty days provisions contained therein. It is argued that the date or event which the notice is to precede must be and is lessee's election to exercise the purchase option, otherwise the purchase option is ambiguous and of no effect. It is pointed out that the notice of February 8, 1951 did not give at least 60 days notice of lessee's election to exercise the option, but by its terms "elects to and does hereby exercise the option." It is further pointed out that the lessee did not await the expiration of 60 days period for exercising the option, for without waiting 60 days from February 8, 1951, the lessee gave the notice of March 22, 1951, and then filed suit within 57 days from this last notice.

We are not impressed with this position. It is true that the phrase in the purchase option "not less than sixty (60) days notice of lessee's election to exercise the purchase option" is ambiguous when considered alone because it fails to state what date or event the 60 days in question is to precede. But by the very terms of the contract the notice given on February 8, 1951, established the relationship of vendor and purchaser between the parties. In Article XVI it is expressly provided that "the giving by Lessee of notice of the exercise of any purchase option hereinbefore granted, shall fix or determine the right by Lessee to purchase the property included in the option, which Lessee elects to exercise and the obligation of the Lessor to sell the same." The object of this provision is to show the time when the option has been effectively exercised.

If it was important that the bill should not be filed until 60 days after notice, this was not done. The notice which fixed the right of lessee to purchase was given on February 8, 1951 and the bill was filed on May 18, 1951. It can also be observed that the lease, as extended, expired on June 8, 1951, so that the notice was given more than 60 days prior to the date of expiration so that it cannot be contended that lessors did not have notice for 60 days during the continuance of the lease.

█ The provision for notice, as suggested in Sinclair Refining Co. v. Allbritton, 147 Tex. 468, 218 S.W.2d 185, 188, 8 A.L.R.2d 595, often serves different purposes and sometimes it is designed merely to afford one or both of the parties a convenient period to do what the circumstances require. "But in the usual case, whatever the practical object of the notice requirement, the act of delivering the notice, if performed within the time limit and not otherwise invalid, forthwith converts the option into a contract of purchase and sale." Sinclair Refining Co. v. Allbritton, supra. In that case under circumstances quite similar to the present case the court was unwilling to adopt the lessor's construction to postpone the effect of the notice until 30 days after the notice was given.

█ II. The demurrer seeks to raise questions of vagueness and indefiniteness in the terms of the contract and description of the property involved. The illegality of the contract is also argued. These grounds of demurrer are not well taken. There is no uncertainty as to the property involved. It is simply the property which has been leased and used for nearly 15 years under a contract which has been confirmed and ratified by amendments thereto. The notice merely called for compliance with the terms of the contract and the conveyance of the property as agreed.

█ It is not necessary for the bill to contain averments to the effect that respondents are able to perform the contract strictly according to its terms. If the respondents wish to defend on the theory that there is inability to perform, as for example that they cannot convey a part of the property which they agreed to convey, such matter may be a defense to be presented by plea or answer, but not by a "speaking demurrer" which assumes facts not disclosed by the bill. McKenzie v. Sutton, 250 Ala. 447, 34 So.2d 825; Blythe v. Enslen, 219 Ala. 638, 639, 123 So. 71. The same comment is applicable to a defense that the con-

tract is illegal. If the illegality does not appear on the face of the bill, it cannot be raised by demurrer. Van Antwerp v. Van Antwerp, 242 Ala. 92, 5 So.2d 73. For example, contrary to the insistence of appellants, there is nothing in the allegations of the bill to show that the option agreement was entered into for the purpose of acquiring a monopoly or in illegal restraint of trade.

 III. We quite agree that the acceptance of the option must be unequivocal, unconditional and without reservation. The lessee cannot accept an option different in scope from the option conferred in the lease. Asbury v. Cochran, 243 Ala. 281, 9 So.2d 887. A fair consideration of the option and notice given in connection therewith shows that the appellee did not seek to change any of the terms of the option but accepted the same unconditionally and absolutely. There is no substantial variance between the option and the acceptance thereof. We have already discussed the notice of the election to exercise the option in connection with the 60 day clause. The option required an abstract showing good merchantable title, while an abstract was requested to show a fee simple title vested in Rice without liens or encumbrances. There is no room for complaint in this regard. Johnson v. Malone, 252 Ala. 609, 42 So.2d 505. Besides the lessors furnished an abstract without objection or protest. The notice asked Rice to communicate with a man in Atlanta, Ga., while, according to appellants, the transaction was to be handled in Opelika, the home of lessors. This was nothing more than the suggesting of a convenient method of handling the matter.

 The bill further shows that the lessors gave notice that they would not comply with the agreement. The bill further shows that the agreed purchase price has been paid into court and the averments are made that complainant is and at all times has been ready, able and willing to perform, submits itself to the jurisdiction of the court and offers to do equity. These allegations, assuming them to be true on demurrer, are sufficient to show that the lessee is entitled to specific performance. Asbury

v. Cochran, 243 Ala. 281, 9 So.2d 887; Root v. Johnson, 99 Ala. 90, 10 So. 293; Irvin v. Irvin, 207 Ala. 493, 93 So. 517; Zirkle v. Ball, 171 Ala. 568, 54 So. 1000; Ashurst v. Peck, 101 Ala. 499, 14 So. 541; Stacey v. Stacey, 250 Ala. 187, 33 So.2d 898. A tender of the deed before the bill was filed was not necessary. It is sufficient to say in this respect that the notice to exercise the option was given within the time allowed for such notice and thereupon the lessors gave notice that they would not comply with the agreement. Davis v. Robert, 89 Ala. 402, 8 So. 114; Stacey v. Stacey, 250 Ala. 187, 33 So.2d 898; authorities supra.

 IV. Attack is made on the bill on the theory that there was unreasonable delay by the lessee in exercising the option to purchase because the option was not sought to be exercised until a short time prior to the expiration of the 15 year term and because the option was not sought to be exercised until after the lessors had spent an additional amount of $800 in making improvements on the property. It is within the discretion of the court to grant specific performance of a contract and this discretion should be exercised in the light of equitable principles and should not be granted where it is shown that the contract is harsh or oppressive or where some unfairness or fraud on the part of the complainant has intervened. Harris v. McCarty, 218 Ala. 195, 118 So. 379; Wiggins v. Sullivan, 219 Ala. 186, 121 So. 731.

 The lease gave the lessee the right to exercise the purchase option "at any time during the granted term of this lease or any extension thereof." 51 C.J.S., Landlord and Tenant, § 84, page 643. In granting specific performance of an option to convey, in Alabama Water Co. v. City of Anniston, 223 Ala. 355, 135 So. 585, 590, this court held: "Whether in any case a change of economic conditions, such as decrease of the purchasing power of the dollar, may render specific performance inequitable, we need not decide. In giving an option to purchase at a flat base price to be exercised at the end of any five-year period within twenty years, the parties are presumed to anticipate such changes, and fix prices accordingly."

The bill in the present case shows no fraudulent or oppressive act on the part of the lessee. On the contrary, it shows a full and faithful compliance with all the obligations imposed upon it by the contract. In Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190, 198, this court said: "Ordinarily a court of equity will not refuse to enforce a contract, if it was fair and reasonable when made, but has become unconscionable or inequitable in consequence of the happening of (even sometimes) unexpected events, for the parties will be considered as having taken upon themselves the risk of subsequent fluctuations in the value of the property, which will not prevent specific performance, unless such changed condition was due to the conduct of the party who seeks the performance." See also South & North Alabama R. R. Co. v. Highland Ave. & Belt R. R. Co., 98 Ala. 400, 13 So. 682, 39 Am.St.Rep. 74.

It is contended that the purchase option and the provisions relating to the lease itself are separate and distinct and that there is no consideration to support the option agreement and that the act of the lessee in waiting nearly 15 years to exercise the option and in remaining silent when the lessors made the improvements admits of a general inference that the option was practically treated as abandoned. We consider, however, that the lease and amendments thereto, along with the option to purchase, which is contained therein, make up one whole and entire contract and are to be construed together. Furthermore payment of rental under the contract is sufficient to support the option to purchase under the contract so that it cannot be withdrawn during the period specified for its continuance. Davis v. Robert, 89 Ala. 402, 8 So. 114; 32 Am.Jur. p. 278. When an option is accepted there arises a binding contract to sell and convey founded on a valuable consideration where rent is paid during the term. Authorities supra; New Brunswick Fire Ins. Co. v. Nichols, 210 Ala. 63, 97 So. 82; Moorer v. Tensaw Land & Timber Co., 246 Ala. 223, 20 So.2d 105.

It cannot be contended that extension of the lease did not extend the time within which the option to purchase could be exercised. As pointed out the purchase option contained in the original lease expressly granted to the lessee the right to exercise the option "at any time during the granted term of this lease or any extension thereof." The notice to extend the lease which was accepted by the lessors contains this express provision: " * * * of extending the term of said lease for the additional period of five years from June 9, 1946, at the rental fixed in said lease, as supplemented by the terms and conditions thereof inclusive of the purchase option and first refusal purchase option therein * * *."

The agreement of January 26, 1938, by which the lease was supplemented so as to provide for the erecting of the wash room or stall with additional rent of $7 per month expressly provided: "It is further understood and agreed by and between the Lessors and Lessee that the terms, covenants, conditions and obligations imposed upon Lessors and Lessee by the said original lease agreement, bearing date of December 28, 1935, shall in no way be altered or changed, or the rights and privileges of Lessors and Lessee in any way prejudiced by the execution of this agreement except as herein expressly set forth, and shall remain in full force and effect and binding upon each of the parties hereto as if this agreement was never entered into, so long as said terms, covenants and conditions do not conflict with the covenants of this supplemental agreement."

In the light of the foregoing provisions, the option to purchase is an integral part of the lease and a substantial part of the whole contract. 51 C.J.S., Landlord and Tenant, § 81, page 638.

It results that the court acted correctly in overruling the demurrer.

Affirmed.

LIVINGSTON, C. J., and BROWN and LAWSON, JJ., concur.