[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 994 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 995 
The Baldwin Circuit Court entered summary judgments in favor of Professional Real Estate Partners, Inc., d/b/a Century 21 Professional Partners (CV-02-1219), Admiral's Quarters Associates, L.L.C. (CV-03-253), and Tidewater Associates, L.L.C. (CV-03-254). Gulf Coast Realty, Inc., d/b/a Gulf Coast Reservations and McLaurin Unlimited, appeals from those judgments. We affirm the judgments for Admiral's Quarters and Tidewater; we affirm in part and reverse in part the judgment for Professional Real Estate.
 I. Facts
On October 25, 1999, Professional Real Estate Partners, Inc., d/b/a Century 21 Professional Partners ("Professional Real Estate"), and Gulf Coast Realty, Inc., d/b/a Gulf Coast Reservations and McLaurin Unlimited ("Gulf Coast Realty"), entered into a written agreement ("the agreement"). The agreement states that Professional Real Estate and/or Rick Phillips, its president, planned to develop four condominium projects, including the Admiral's Quarters condominiums and the Tidewater condominiums. The agreement provides, among other things, that (1) for five years, Gulf Coast Realty will pay Professional Real Estate a certain percentage of the gross rentals or gross commission from rentals, depending on Gulf Coast Realty's seasonal commission rate;[1] and (2) for five years from the date of the agreement, Professional Real Estate will assist and cooperate in Gulf Coast Realty's efforts to become the rental agent for purchasers of the condominium units.[2] The provisions of *Page 996 
the agreement that give rise to the underlying dispute in these cases are paragraphs 5 and 6, which read in full as follows:
 "5) With reference to the projects described on Exhibit `A', [which include Admiral's Quarters condominiums and Tidewater condominiums], a copy of which is attached hereto and made a part hereof as if fully set out herein, [Professional Real Estate] shall lease to [Gulf Coast Realty] ground floor office space and storage space for cleaning and maintenance in the Condominium projects. [Professional Real Estate] shall exclusively authorize and permit ownership and/or lease of the facility to [Gulf Coast Realty] to use such facility for any legal purpose including, but not limited to, a rental and/or management office, and it's [sic] pro rata share of common areas and parking subject to the other terms and conditions of the condominium documents, and paying its pro rata share of condominium fees. The condominium documents shall also contain the right to allow [Gulf Coast Realty] to place reasonable signage at the entrance of the project, on the office and directional signage in the parking area directing renters to its's [sic] office and advising the public that facilities are for rent.
 "6) [Gulf Coast Realty] shall pay the sum of Ten ($10.00) Dollars per annum to [Professional Real Estate], plus the payment of condo dues and assessments, if any to [Professional Real Estate] for rental of this office area and shall have an option to purchase the area at any time within five (5) years of the commencement of the lease, the purchase price to be One Hundred ($100.00) Dollars per square foot of the office areas leased, payable in cash at closing. Exercise of the option must be given in writing by [Gulf Coast Realty] to [Professional Real Estate] no less then [sic] thirty (30) days before the end of the five (5) years and closing shall be within thirty (30) days of receipt of the notice to [Professional Real Estate.]"
The agreement is signed by Rick Phillips, as the president of Professional Real Estate and by Thomas M. Marr, Jr., as the president of Gulf Coast Realty.[3]
The Admiral's Quarters condominiums and the Tidewater condominiums apparently were developed by and are owned by Admiral's Quarters Associates, L.L.C. ("Admiral's Quarters"), and Tidewater Associates, L.L.C. ("Tidewater"), respectively — not by Professional Real Estate or by Rick Phillips individually, as was contemplated by the agreement. Rick Phillips is a member of and owns a 50% interest in both Admiral's Quarters and Tidewater.
Gulf Coast Realty has occupied the office condominium unit at the Admiral's Quarters condominiums and at the Tidewater condominiums and has paid Professional Real Estate certain sums due under paragraph 2 of the agreement. However, Professional Real Estate asserts that Gulf Coast Realty never paid the $10 annual *Page 997 
rental for the office space and did not timely pay dues and assessments that Professional Real Estate says were owed under paragraph 6 of the agreement.
On October 25 and 29, and again on October 31, 2002, Professional Real Estate, Rick Phillips, and Tidewater notified Gulf Coast Realty in writing that its tenancy and possessory rights in the office unit at the Tidewater condominiums were being terminated because it had breached the agreement. Also on October 25, 29, and 31, 2002, Professional Real Estate, Rick Phillips, and Admiral's Quarters notified Gulf Coast Realty that its tenancy and possessory rights in the office unit at Admiral's Quarters condominiums were being terminated because it had breached the agreement. On October 28, 2002, the law firm representing "Professional Real Estate Partners, Inc., d/b/a Century 21 Professional Partners, Inc., and Rick A. Phillips" notified Gulf Coast Realty in writing that it was in default of the agreement for "among other reasons failure to comply with paragraphs 2, 5, and 6 of the agreement" and "[a]s a consequence, the agreement is terminated and no performance on the part of Professional Real Estate Partners, Inc., d/b/a Century 21 Professional Partners, Inc., and Rick A. Phillips is due."
On December 2, 2002, a letter signed by the "Attorney for [the] Owner" was delivered to Gulf Coast Realty demanding that Gulf Coast Realty leave and deliver possession of the commercial unit at the Tidewater condominiums "to me or my Agent (Century 21 Professional Partners)." Also on December 2, 2002, a letter signed by the "Attorney for [the] Owner" was delivered to Gulf Coast Realty demanding that Gulf Coast Realty leave and deliver possession of the commercial unit at the Admiral's Quarters condominiums "to me or my Agent (Century 21 Professional Partners)." Gulf Coast Realty did not deliver possession of either of the office units.
 II. Procedural History A. Appeal no. 1031924 — Gulf Coast Realty v. Professional Real Estate (CV-02-1219)
On November 12, 2002, after receiving notice that its tenancy was terminated and that it was considered in default of the agreement, Gulf Coast Realty brought an action against Professional Real Estate in the Baldwin Circuit Court seeking a judgment declaring that Professional Real Estate was prohibited from terminating Gulf Coast Realty's tenancy in the office units at the Admiral's Quarters condominiums and the Tidewater condominiums. Gulf Coast Realty later amended its complaint to include a claim seeking specific performance of Gulf Coast Realty's option to purchase the office units at the Admiral's Quarters condominiums and the Tidewater condominiums. Gulf Coast Realty did not name Admiral's Quarters or Tidewater — the owners of the condominiums — as defendants in its original complaint or in its first amended complaint, filed on December 6, 2002.
In September 2003, the trial court set trial for November 3, 2003. On October 27, 2003, Professional Real Estate moved for a summary judgment. The initial trial date of November 3, 2003, was continued to December 16, 2003, and then again to sometime in March 2004. On January 9, 2004, Gulf Coast Realty moved for leave to file a second amended complaint. Gulf Coast Realty's second amended complaint would have added Admiral's Quarters and Tidewater as defendants in the declaratory-judgment action and would have added alternative claims of breach of contract and fraud under the theory that Professional Real Estate was an agent for undisclosed principals — Admiral's Quarters and Tidewater — when it entered into the agreement. *Page 998 
On January 13, 2004, the trial court heard Professional Real Estate's summary-judgment motion. On January 29, 2004, the trial court entered a summary judgment in favor of Professional Real Estate on Gulf Coast Realty's claim for specific performance of the alleged purchase option "because the option was not supported by consideration." On August 10, 2004, the trial court entered a summary judgment in favor of Professional Real Estate on Gulf Coast Realty's claim seeking a judgment declaring that Professional Real Estate could not terminate its possessory rights. The trial court did not rule on Gulf Coast Realty's motion for leave to file a second amended complaint.[4]
Gulf Coast Realty appeals the summary judgment.
B. Appeals no. 1031926 and no. 1031928 — Admiral's Quarters v. Gulf Coast Realty (CV-03-253) and Tidewater v. Gulf Coast Realty (CV-03-254)
On December 16, 2002, Admiral's Quarters and Tidewater brought separate eviction actions against Gulf Coast Realty in the Baldwin District Court. Pursuant to Ala. Code 1975, § 35-9-85, Gulf Coast Realty responded to the eviction actions by filing in each case a counter-affidavit of Thomas Marr, Jr.[5] In that affidavit, Marr asserted that Gulf Coast Realty had previously instituted an action against Professional Real Estate seeking a declaration that Gulf Coast Realty maintains a valid option under the agreement to purchase the office units at the Admiral's Quarters condominiums and the Tidewater condominiums. In each case, the district court entered a "judgment for landlord." The district court also entered writs of possession commanding the sheriff to restore possession of the office unit at the Admiral's Quarters condominiums to Admiral's Quarters and the office unit at the Tidewater condominiums to Tidewater.[6] Gulf Coast Realty appealed both judgments to the Baldwin Circuit Court.
In the appeals to the Baldwin Circuit Court, Admiral's Quarters and Tidewater *Page 999 
amended the complaints they had filed in the district court. Admiral's Quarters and Tidewater contended in their amended complaints (1) that, pursuant to Ala. Code 1975, §35-9-1,[7] Gulf Coast Realty cannot maintain possession while claiming the right to exercise an option to purchase; (2) that there is no valid option to purchase because Admiral's Quarters and Tidewater did not sign the agreement containing the option; and (3) that the option is void because it is not supported by separately stated consideration. Admiral's Quarters and Tidewater moved for summary judgments. The circuit court judges entered summary judgments in favor of Admiral's Quarters and Tidewater. Gulf Coast Realty appeals both judgments.
We consolidated the three appeals for purposes of writing one opinion.
 III. Standard of Review
Our review of a summary judgment is de novo.
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542
(Ala. 1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
 IV. Discussion A. Gulf Coast Realty v. Professional Real Estate (Appeal no. 1031924) 1.
Gulf Coast Realty sought a judgment declaring that Professional Real Estate is obligated to convey the office units at the Admiral's Quarters condominiums and the Tidewater condominiums to Gulf Coast Realty, pursuant to the option contained in paragraph 6 of the agreement. In entering a summary judgment in favor of Professional Real Estate on this claim, the trial court found that "the purported option was not supported by consideration." Gulf Coast Realty argues that the trial court erred in concluding that the option was not supported by consideration. Gulf Coast Realty argues that the option was supported by consideration in that the agreement contained "mutual covenants" that the parties recognized as "advantageous to each." Specifically, Gulf Coast Realty points to its various obligations under the contract, such as its promise to pay Professional Real Estate five percent of *Page 1000 
rentals for five years, to pay referral fees to Professional Real Estate's agents, to pay Professional Real Estate $10 a year in rent, and to pay Professional Real Estate condominium dues and assessments. Gulf Coast Realty does not and cannot point to any provision of the contract as a statement of separate consideration for the option, but argues that the parties are not obligated to "match each element of consideration to a specific promise."
In support of its finding that the option is not supported by consideration, the trial court cited Foy v. Foy, 484 So.2d 439
(Ala. 1986), in which the following statement, which supports the trial court's conclusion, appears:
 "`The consideration for the option is a thing apart from the consideration for the sale of the land. There must be some consideration on which the finger may be placed and of which it may be said, "this was given by the proposed purchaser to the proposed vendor, as the price for the option, or privilege to purchase.". . .'"
484 So.2d at 442 (quoting 77 Am.Jur.2d Vendor and Purchaser § 34 at 214 (1975)). Professional Real Estate relies on Foy andArmstrong Business Services, Inc. v. Am-South Bank,817 So.2d 665 (Ala. 2001), in support of its argument that the purchase option in the agreement is void for lack of consideration.
Foy and Armstrong, however, are distinguishable from this case. In Foy, this Court considered an attempt by one family member to compel another family member to specifically perform an option contract allowing the first to purchase certain real estate from the other. The Court emphasized the requirement of the Statute of Frauds that the option agreement itself contain a statement of the consideration. ("We agree with the trial court's finding that the option contract here, which falls within the Statute [of Frauds], . . . contained no statement in writing expressing the consideration for the option itself."484 So.2d at 442.) After reciting the pertinent provision from the contract,[8] this Court concluded that the option contract contained no statement of any consideration for the option itself, stating: "The monetary figure expressed, $18,637.50, refers not to the option contract but to the consideration to be paid in the future for the deed of the land to be purchased. That transaction has nothing to do with the unilateral option contract." 484 So.2d at 442-43. Because the contract did not state the consideration for the option, the Court affirmed the trial court's judgment holding that the option was contrary to the Statute of Frauds because it contained no statement in writing expressing the consideration for the option itself.[9] Significantly, the contract in Foy was only an option contract; the seller had the obligation to convey if the purchaser remitted the $18,637.50; however, the purchaser had no obligation under the option contract to make any payment, to tender the *Page 1001 
$18,637.50, or to do or refrain from doing anything else.
In Armstrong Business Services, this Court reviewed a trial court's conclusion that a loan commitment was void under the Statute of Frauds because there was no writing expressing consideration for a commitment by AmSouth Bank to lend money to Armstrong. An enforceable loan commitment is treated as an option contract purchased by the prospective borrower. 817 So.2d at 674
(citing Peterson Dev. Co. v. Torrey Pines Bank,233 Cal. App.3d 103, 284 Cal.Rptr. 367 (1991); Capital Holding Corp. v. OctagonDev. Co., 757 S.W.2d 202 (Ky.Ct.App. 1988); and AnalyticalDesign Constr. Group, Inc. v. Murray, 690 P.2d 269
(Colo.Ct.App. 1984)). Thus, the Court considered whether underFoy the purported loan commitment violated the Statute of Frauds and was void for failing to state consideration. It held that the loan commitment was void.
As in Foy, the purported option in Armstrong BusinessServices (loan commitment) would have bound AmSouth to loan money to Armstrong Business Services, but Armstrong Business Services had no obligation under the agreement. The requirement appearing in Foy and Armstrong Business Services of a separate expression of consideration for an option applies only to option contracts that are nudum pactum on their face, that is, those contracts that constitute only gratuitous promises by the would-be seller and thus fail for lack of consideration. Thus, Foy and Armstrong are distinguishable from this case in that the purchaser here, Gulf Coast Realty, did have duties under the contract. We conclude that those duties constitute consideration for the option.
In Rice v. Sinclair Refining Co., 256 Ala. 565, 56 So.2d 647
(1952), this Court addressed a situation factually similar to that presented by the case before us today. In Rice, this Court considered the argument that an option to purchase contained in a lease is distinct from the provisions of the contract that relate to the lease, and that no separate consideration was provided to support the option agreement. The Court held that the option was supported by consideration because "payment of rental under the contract is sufficient to support the option to purchase under the contact so that it cannot be withdrawn during the period specified for its continuance." 256 Ala. at 573, 56 So.2d at 653
(citing Davis v. Robert, 89 Ala. 402, 8 So. 114 (1890); 32 Am.Jur. p. 278). In addition, "[w]hen an option is accepted there arises a binding contract to sell and convey founded on valuable consideration where rent is paid during the term."256 Ala. at 573, 56 So.2d at 653 (citing New Brunswick Fire Ins. Co. v.Nichols, 210 Ala. 63, 97 So. 82 (1923); Moorer v. Tensaw Land Timber Co., 246 Ala. 223, 20 So.2d 105 (1944)). See also Fursev. Timber Acquisition, 303 S.C. 388, 390, 401 S.E.2d 155, 156
(1991) ("[A]s to option contracts, the general rule is that leases frequently contain provisions conferring upon the lessee the option to purchase the premises. The provision in a lease for specified payments by the lessee to the lessor is consideration for an option to purchase contained in the lease, although the consideration is unseparated from that given for occupation of the property." (citation omitted)); Amann v. Frederick,257 N.W.2d 436, 439 (N.D. 1977) ("[C]onsideration for an option can be supplied by the consideration for a lease in the same instrument.").
Gulf Coast Realty's option to purchase the office units at the Admiral's Quarters condominiums and the Tidewater condominiums is not void as nudum pactum. The agreement provides that Gulf Coast *Page 1002 
Realty and Professional Real Estate had "determined that the terms of [the] Agreement [were] advantageous to each," and "in consideration of the mutual covenants . . . contained [in the written agreement], the receipt and sufficiency whereof [were thereby] acknowledged," the two parties agreed that Gulf Coast Realty would pay referral fees, condominium fees, $10 per year, and a certain percentage of the rent or commissions collected from owners of condominium units (depending upon the particular unit rented). In return, Professional Real Estate promised to refer to Gulf Coast Realty new and potential owners of condominium units, to lease to Gulf Coast Realty both office and storage space, to allow Gulf Coast Realty to put its signs in and around the condominiums, to furnish the leased space, and to give Gulf Coast Realty an option to purchase that space.
Thus, we conclude that the agreement states consideration for the option and that, therefore, the option is not void under the Statute of Frauds. The trial court erred in concluding that the option is void for lack of consideration and in entering a summary judgment in favor of Professional Real Estate on Gulf Coast Realty's claim for specific performance of its options to purchase the office units at the Admiral's Quarters condominiums and at the Tidewater condominiums.[10] We therefore reverse the trial court's judgment on this claim.
 2.
Gulf Coast Realty also sought a judgment declaring that it had complied with its obligations under the agreement and that Professional Real Estate was therefore prohibited from terminating its tenancies in the condominiums. The trial court entered a summary judgment in favor of Professional Real Estate on this claim, finding "that the tenancies were properly terminated as a matter of undisputed material fact and law." We conclude in Part B of this opinion, in our discussion of the eviction actions, that Admiral's Quarters and Tidewater, the owners of the Admiral's Quarters condominiums and the Tidewater condominiums, properly terminated Gulf Coast Realty's tenancy in the condominiums. Therefore, we hold that the trial court did not err in entering a summary judgment against Gulf Coast Realty on its claim for a judgment declaring that the tenancies had been improperly terminated.
 3.
Gulf Coast Realty argues that the trial court erred in denying its motion for leave to file a second amended complaint in the declaratory-judgment action. Rule 15(a), Ala. R. Civ. P., provides, in pertinent part, as follows:
 "(a) Amendments. Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court's own motion or a motion to strike of an adverse party, at any time more than forty-two *Page 1003 
(42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause. . . ."
The case was first set to be tried on November 3, 2003. Gulf Coast Realty's January 9, 2004, motion for leave to file a second amended complaint clearly was not filed "more than forty-two (42) days before the first setting of the case for trial"; the motion was made well after the first setting of the case for trial. Therefore, Gulf Coast Realty could amend its pleading only by leave of court, which "shall be given only upon a showing of good cause." See Rule 15(a), Ala. R. Civ. P.
"`Although Rule 15(a) itself calls for liberal amendment, this Court has held consistently that "the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion."'" Rector v. Better Houses, Inc., 820 So.2d 75, 78
(Ala. 2001) (quoting Boros v. Baxley, 621 So.2d 240, 245 (Ala. 1993)). "`Rule 15, [Ala. R. Civ. P.], is not carte blanche authority to amend a complaint at any time.'" Rector,820 So.2d at 78 (quoting Stallings v. Angelica Uniform Co.,388 So.2d 942, 947 (Ala. 1980), quoting in turn Stead v. Blue Cross-BlueShield of Alabama, 294 Ala. 3, 6, 310 So.2d 469, 471 (1975)). "`Discretion rests in the trial judge to deny amendments for good cause. . . . "[I]f the court determines . . . that a party has had sufficient opportunity to state a claim or revise his answer to a complaint but has failed to do so, leave to amend may properly be denied."'" Ex parte Tidmore, 418 So.2d 866, 868-69
(Ala. 1982) (quoting Stallings, 388 So.2d at 947).
In its motion for leave to file its second amended complaint, Gulf Coast Realty did not specifically address whether it had "good cause" to amend its complaint. However, it stated that the ground for its motion was that Professional Real Estate, the only defendant, had "recently" moved for a summary judgment arguing that it was not the owner of the condominiums, but that Admiral's Quarters and Tidewater were the owners.
We first note that Professional Real Estate had moved for a summary judgment over two months before Gulf Coast Realty moved for leave to amend. Moreover, Gulf Coast had had a "sufficient opportunity" to amend its complaint even before Professional Real Estate moved for a summary judgment. Gulf Coast Realty sought to amend its complaint to add Admiral's Quarters, Tidewater, and Rick Phillips as defendants and to add additional claims of fraud and breach of contract.[11] Gulf Coast Realty should have been aware that Admiral's Quarters and Tidewater, not Professional Real Estate, were the owners of the condominiums at least as early as December 2002, when Admiral's Quarters and Tidewater instituted eviction actions against Gulf Coast Realty. "[U]ndue delay in filing an amendment, when it could have been filed earlier based on the information available or discoverable, is in itself ground for denying an amendment." Puckett, Taul Underwood, Inc. v. *Page 1004 Schreiber Corp., 551 So.2d 979, 984 (Ala. 1989). Thus, the trial court could have properly determined that Gulf Coast Realty did not show "good cause" for filing an amendment to its complaint in January 2004. The trial court did not exceed its discretion in denying Gulf Coast Realty's motion for leave to amend.
B. The Eviction Actions: Admiral's Quarters v. Gulf Coast Realty (Appeal no. 1031926) and Tidewater v. Gulf Coast Realty (Appeal no. 1031928)
In entering a summary judgment in favor of Admiral's Quarters in its eviction action against Gulf Coast Realty, the trial court stated:
 "[Gulf Coast Realty is] in possession of the [office unit at Admiral's Quarters]. [Gulf Coast Realty] unlawfully detained the premises after termination of [Gulf Coast Realty's] possessory interest and after [Admiral's Quarters'] demand therefor more than ten (10) days before commencing this action."
In entering a summary judgment in favor of Tidewater in its separate eviction action against Gulf Coast Realty, the trial court made the same statement.
On appeal, Gulf Coast Realty argues that the trial courts in both eviction actions erred in entering summary judgments in favor of Admiral's Quarters and Tidewater because, Gulf Coast Realty argues, there were questions of fact as to whether Gulf Coast Realty unlawfully detained the office units in the Admiral's Quarters condominiums and the Tidewater condominiums. Specifically, Gulf Coast Realty asserts that it presented evidence creating a genuine issue of material fact as to whether it had paid the $10 annual rent due Professional Real Estate under paragraph 6 of the agreement.
However, whether Gulf Coast Realty paid the rent in accordance with the terms of the agreement is immaterial if Admiral's Quarters and Tidewater were entitled to terminate Gulf Coast Realty's possessory interest even in the absence of a breach of the agreement.[12]
Admiral's Quarters and Tidewater argue that the summary judgments are due to be affirmed because the agreement provides for a month-to-month or year-to-year lease and they gave Gulf Coast Realty proper notice of termination of the lease. Gulf Coast Realty argues that the trial court could not properly enter summary judgments in favor of Admiral's Quarters and Tidewater because, it says, the agreement specifies a lease term of five years, which had not expired when Admiral's Quarters and Tidewater attempted to terminate the lease, and that, therefore, it was not in wrongful possession and could not be evicted. Alternatively, Gulf Coast Realty argues that there is a genuine issue of material fact as to the term of the lease and that, therefore, the trial court could not *Page 1005 
enter a summary judgment in favor of Admiral's Quarters and Tidewater on the ground that Gulf Coast Realty was in wrongful possession of the office units.
We first consider Gulf Coast Realty's assertion that the agreement specifies a lease term of five years. "`It is well settled that a court in seeking to ascertain the intention of the parties in construing a contract, will consider the contract as a whole, although the immediate object of the inquiry is the meaning of a particular clause. Further, a contract must be construed as a whole and, whenever possible, effect must be given to all its parts.'" West Town Plaza Assocs., Ltd. v. Wal-MartStores, Inc., 619 So.2d 1290, 1294 (Ala. 1993) (quoting LandTitle Co. of Alabama v. State ex rel. Porter, 292 Ala. 691, 698,299 So.2d 289, 295 (1974)). Construing the agreement as a whole and giving effect to the only two provisions that reference a five-year period, we cannot agree with Gulf Coast Realty that the agreement specifies a lease term of five years.
In support of its argument that the agreement specifies a lease term of five years, Gulf Coast Realty cites paragraph 2 of the agreement, which provides, generally, that Gulf Coast Realty shall pay Professional Real Estate a percentage of rentals received by Gulf Coast Realty for a period of five years.[13] We are unpersuaded by this argument. Paragraph 2 does not indicate that this five-year arrangement is related to the lease of an office unit at the Admiral's Quarters condominiums or the Tidewater condominiums. Gulf Coast Realty and Professional Real Estate could perform its duties under paragraph 2 of the agreement regardless of whether Gulf Coast Realty occupied office space in the Admiral's Quarters condominiums and the Tidewater condominiums.
Gulf Coast Realty also argues that it is reasonable to interpret the agreement as providing for a lease term of five years because the option to purchase set forth in paragraph 6 of the agreement extended for five years. We cannot agree with Gulf Coast Realty that paragraph 6 indicates a lease term of five years. Gulf Coast Realty could hold this option to purchase for five years without leasing the office unit during that period. Neither paragraph 2 nor paragraph 6 nor the agreement as a whole supports Gulf Coast Realty's contention that the agreement provides a lease term of five years.
Gulf Coast Realty alternatively argues that the agreement is ambiguous as to the term of the lease and, thus, the term of the lease is a question of fact for the jury. "The general rule is that this Court will `construe [a] lease according to the parties' intention as gathered from the whole instrument, and, if the language is not clear, the circumstances attending its execution and the subsequent acts of the parties.'" West TownPlaza Assocs., 619 So.2d 1290 at 1294 (quoting Irwin v.Baggett, 231 Ala. 324, 326, 164 So. 745, 746 (1935)). We have reviewed the agreement as a whole, and we conclude that it does not specify a lease term of five years. We further conclude that the agreement is not unclear or ambiguous as to the lease term; instead, the agreement is silent as to the term of the lease.
"If the court determines that the terms [of a contract] are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written." Homes of Legend, Inc.v. McCollough, *Page 1006 776 So.2d 741, 746 (Ala. 2000). "[I]n the absence of ambiguity the court cannot interpret the contract but must take it as it is written."Darling Shop of Birmingham, Inc. v. Nelson Realty Co.,255 Ala. 586, 591, 52 So.2d 211, 215 (1951). As written, the agreement does not specify a term of the lease. The law recognizes that parties may agree to a lease for an unspecified term, the consequences of which we address below. See 1 Restatement(Second) of Property: Landlord and Tenant § 1.5 (1977) ("A landlord-tenant relationship may be created to endure until one of the parties has given the required notice to terminate the tenancy at the end of a period."). Thus, we reject Gulf Coast Realty's argument that the agreement is ambiguous as to the term of the lease.
Admiral's Quarters and Tidewater argue, as they did in support of their respective summary-judgment motions, that because the term of the lease is not specified in the agreement, it is presumed to be a monthly or a yearly lease under Ala. Code 1975, §35-9-4.[14] Thus, they argue that the leases of the office units to Gulf Coast Realty were properly terminated. In response, Gulf Coast Realty argues that § 35-9-4 applies only to the lease of "lodgings or a dwelling house" and that it does not apply to the commercial office units at issue. Although, as Admiral's Quarters and Tidewater point out, Gulf Coast Realty cites no caselaw in support of its argument that § 35-9-4 is inapplicable in this case, Alabama appellate courts have not had occasion to cite that statute. Moreover, the plain language of the statute indicates that it is not applicable to this case.
Therefore, we turn to the more general statute, Ala. Code §35-9-3, entitled "Duration of tenancy when time for termination not specified — Generally":
 "Where no time is specified for the termination of tenancy, the law construes it to be from December 1 to December 1 but if it is expressly a tenancy at will, then either party may terminate it at will, by 10 days' notice in writing."
The agreement does not specify a time for termination. Thus, Ala. Code 1975, § 35-9-3 treats the lease as terminating on December 1. In other words, the lease creates a periodic tenancy that would end on the December 1 following the commencement of the lease term. "A landlord-tenant relationship may be created to endure until one of the parties has given the required notice to terminate the tenancy at the end of a period." 1 Restatement(Second) of Property: Landlord and Tenant § 1.5, entitled "Periodic Tenancy." Whether Admiral's Quarters and Tidewater gave the required notice to terminate Gulf Coast Realty's periodic tenancy on December 1 depends upon the length of the period of the tenancy — month-to-month or year-to-year.[15] *Page 1007 
 "Where the parties enter into a lease of no stated duration and periodic rent is reserved or paid, a periodic tenancy is presumed. The period thus presumed is equal to the interval for which rent is reserved or paid to a maximum periodic tenancy of year to year."
1 Restatement (Second) of Property: Landlord and Tenant § 1.5, cmt. d.
The agreement in this case provides for rent to be paid annually. Thus, we conclude that the period of the lease is year-to-year,[16] and we consider whether Gulf Coast Realty's year-to-year tenancy was properly terminated. "[T]he general rule is that, in the absence of an agreement between the parties, a month's notice prior to the end of the leasehold period, when that period is a month or more, is adequate." Brownv. Williams, 576 So.2d 195, 197 (Ala. 1991) (citing 1Restatement (Second) of Property: Landlord and Tenant § 1.5(f)).[17] The end of the leasehold period for the office units was December 1. Admiral's Quarters and Tidewater gave notice on October 25, 29, and 31, 2002; that is, Admiral's Quarters and Tidewater provided more than a month's notice before the end of the leasehold period, thereby effectively terminating Gulf Coast Realty's possessory interest and entitling Admiral's Quarters and Tidewater to possession of the respective condominium units.
Because Admiral's Quarters and Tidewater lawfully terminated the respective leases, Admiral's Quarters and Tidewater were entitled to a judgment as a matter of law in the eviction actions. The trial courts did not err in entering summary judgments in favor of Admiral's Quarters and Tidewater.[18]
 V. Conclusion
In Gulf Coast Realty's action against Professional Real Estate (appeal no. 1031924), we hold that the trial court did not err in entering a summary judgment in favor of Professional Real Estate on Gulf Coast Realty's claim seeking a declaration that Professional Real Estate was prohibited *Page 1008 
from evicting Gulf Coast Realty from the Admiral's Quarters condominiums and the Tidewater condominiums. We also hold that the trial court did not err in denying Gulf Coast Realty's motion to amend its complaint. However, the trial court did err in entering a summary judgment in favor of Professional Real Estate on Gulf Coast Realty's claim seeking specific performance of the option to purchase contained in the agreement. We reverse that portion of the trial court's summary judgment for Professional Real Estate and remand the case for proceedings consistent with this opinion.
In the eviction proceedings (appeals no. 1031926 and no. 1031928), the trial court did not err in entering summary judgments for Admiral's Quarters and for Tidewater. Admiral's Quarters and Tidewater properly terminated the lease. Thus, we affirm those judgments.
1031924 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
1031926 — AFFIRMED.
1031928 — AFFIRMED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] Paragraph 2 of the agreement reads as follows:
 "[Gulf Coast Realty] will pay [Professional Real Estate] five (5%) percent of the gross rentals less direct cost (including but not limited to, refunds, cancellations, rebates, credit card fees and referral cost) for five (5) years for units which maintain a twenty-five (25%) percent seasonal commission rate with [Gulf Coast Realty]. [Gulf Coast Realty] will pay [Professional Real Estate] twenty (20%) percent of the gross commission from rentals less the direct cost (including, but not limited to, refunds, cancellations, rebates, credit card fees and referral cost) for five (5) years for units which maintain a rate less than twenty-five (25%) seasonal commission rate with [Gulf Coast Realty]. This rate shall be valid from the date that each project receives a Certificate of Occupancy from it's [sic] governing municipality. Said payment shall be made within forty-five (45) days after receipt from [Gulf Coast Realty.]"
Paragraph 3 provides that Gulf Coast Realty will no longer be obligated to pay these amounts when a condominium unit is resold by a Professional Real Estate agent and the agent receives a referral fee from Gulf Coast Realty for placing the condominium units in Gulf Coast Realty's rental program.
[2] This provision is set out in paragraph 4 of the agreement, which reads as follows:
 "[Professional Real Estate] and Phillips agree that, for a period of five (5) years from the date of this Agreement, they shall make every effort to have [Gulf Coast Realty] manage the Associations of the projects listed on Exhibit `A'[, which include Admiral's Quarters condominiums and Tidewater condominiums;] however, this final decision to manage any Association shall be the choice of [Gulf Coast Realty] and it's [sic] Directors. If all terms and budgets are acceptable to [Gulf Coast Realty], [Professional Real Estate] and [Gulf Coast Realty] shall enter into a contract for [Gulf Coast Realty] to manage the condominium Association, and maintain the common areas of each of the projects described in Exhibit `A,' with the fee for each management contract to be reasonable and commensurate with the amounts paid in the geographical area of the location of the condominium."
[3] Thomas Marr, Jr., and his father, Thomas Marr, Sr., are two of several shareholders of Gulf Coast Realty. The agreement was drafted by Maury Friedlander, a law partner of Thomas Marr, Sr.
[4] Professional Real Estate asserts that at the January 13, 2004, hearing, the trial court indicated that it intended to deny Gulf Coast Realty's motion for leave to amend its complaint. The parties agree that by entering a final judgment without permitting the amendment the trial court effectively denied the motion.
[5] Section 35-9-84, Ala. Code 1975, "Arrest of proceedings," provides as follows:
 "The tenant may arrest the proceedings and prevent the removal of himself and goods from the land by declaring on oath that his lease or term of rent has not expired, and that he is not holding possession of the premises over and beyond his term, or that his right of possession has not terminated or been forfeited, and that he still has a good and lawful right to the possession of said premises."
Section 35-9-85, Ala. Code 1975, "Trial upon delivery of counter affidavit," provides:
 "If the counter affidavit provided in section 35-9-84
be made and delivered to the sheriff or deputy sheriff or constable, the tenant shall not be removed, but the officer shall immediately return the proceedings to the court which issued said writ or process, and the fact or facts in issue shall be there tried by said court, and shall stand for trial on the third day after the delivery to said sheriff or deputy sheriff or constable of such counter affidavit, Sundays and legal holidays excepted."
[6] The district court's judgment and writ of possession in favor of Admiral's Quarters actually put Admiral's Quarters in possession of the Tidewater condominium; the district court's judgment and writ of possession in favor of Tidewater put Tidewater in possession of the Admiral's Quarters condominium. There was apparently some confusion in the district court as to which case number was assigned to the Tidewater action and which case number was assigned to the Admiral's Quarters action. The parties do not raise this as an issue. It appears to be the result of clerical errors.
[7] Section 35-9-1 provides: "The tenant cannot dispute his landlord's title, nor attorn to another claimant while in possession, except in cases provided otherwise in this Code."
[8] The provision read:
"`KNOW ALL MEN BY THESE PRESENTS, That we, R.E. Foy, Jr. and Jane Loring Foy, do covenant and agree with R.E. Foy, Sr. and wife, Ruth N. Foy, of Dothan, Houston County, Alabama, that if the said R.E. Foy, Sr. or Ruth N. Foy will tender, or cause to be tendered, to us, the said R.E. Foy, Jr. and Jane Loring Foy, at any time during their lifetime the sum of $18,637.50, we will grant, bargain, sell and convey to the said R.E. Foy, Sr. or Ruth N. Foy, with full covenants of warranty, the following property, to-wit: . . .'"
Foy, 484 So.2d at 442-43.
[9] The Court further held that any supposed consideration for the option not stated in the writing would not have made the option enforceable. Foy, 484 So.2d at 443.
[10] The condominiums are owned by Admiral's Quarters and by Tidewater, respectively. Professional Real Estate is the party to the agreement, but, as Gulf Coast Realty points out, one need not own property in order to contract to sell it. To satisfy its obligation to convey the property upon Gulf Coast Realty's exercise of the option, Professional Real Estate need only acquire the office units from Admiral's Quarters and Tidewater before the transfer, a task the agreement apparently contemplates that Professional Real Estate would be able to accomplish. See,e.g., Ballew v. Charter Realty ERA, 603 So.2d 877, 880 (Ala. 1992) ("Alabama law does not require that a seller have good title at the time of contracting for the sale of the land. The seller must have good title when, by the terms of the contract, he is required to do so." (citing Barksdale v. Temerson,251 Ala. 495, 497, 38 So.2d 5 (1948))).
[11] Gulf Coast Realty alleged in its second amended complaint that, if Admiral's Quarters and Tidewater were not bound by the agreement, then Professional Real Estate and Phillips had misrepresented that Professional Real Estate had authority to lease the office units to Gulf Coast Realty and provide Gulf Coast Realty an option to purchase Admiral's Quarters and Tidewater. Alternatively, Gulf Coast Realty alleged that, if Admiral's Quarters and Tidewater were not bound by the agreement, then Professional Real Estate had breached the agreement by failing to provide a valid lease and a valid option to purchase.
[12] Admiral's Quarters and Tidewater also argue that because they did not sign the agreement they are not bound by it; thus, they argue, Gulf Coast Realty's tenancies at the Admiral's Quarters condominiums and the Tidewater condominiums were mere tenancies at will and were subject to termination at any time. Gulf Coast Realty argues that Professional Real Estate and Rick Phillips were agents of undisclosed principals — Admiral's Quarters and Tidewater — and that an undisclosed principal who accepts the benefits of a contract signed by its agent is bound by the provisions of the contract.
We conclude that the summary judgments in favor of Admiral's Quarters and Tidewater were proper because Admiral's Quarters and Tidewater legally terminated Gulf Coast Realty's tenancies; therefore, we need not decide whether the summary judgments were proper on the basis that Admiral's Quarters and Tidewater were not parties to the agreement or whether as undisclosed principals they were bound by the agreement.
[13] The full text of paragraph 2 of the agreement is set forth in footnote 1 of this opinion.
[14] Section 35-9-4, entitled "[Duration of tenancy when time for termination not specified] — Hiring of lodgings for indefinite term," reads in full as follows:
 "A hiring of lodgings or a dwelling house for an unspecified term is presumed to have been made for such length of time as the parties adopt for the estimation of the rent. Thus a hiring at a monthly rate of rent is presumed to be for one month. In the absence of any agreement respecting the length of time for the rent, the hiring is presumed to be monthly."
[15] "The lease from period to period described in this section [entitled `Periodic Tenancy'] traditionally has been referred to as a tenancy from year to year, or a tenancy from month to month, or a tenancy from week to week, depending on the length of the period that is specified."
1 Restatement (Second) of Property: Landlord and Tenant § 1.5, cmt. a.
[16] Comment d. to the Restatement goes on to say that "[t]he presumption that a periodic tenancy is intended may be rebutted by language or circumstances showing a contrary intent"; however, as we demonstrated above, Gulf Coast Realty's argument to rebut the presumption of a periodic tenancy — that the lease is a five-year lease — is without merit.
[17] The Restatement discusses the prior common-law requirement of six months' notice and the more modern requirement of one month's notice:
 "In the absence of any provision in the lease in regard to notice to terminate a periodic tenancy, the common law required notice six months prior to the end of the period, if the period is from year to year, and notice equal to the length of the period in other instances. Although the six months' notice requirement remains a reasonable rule in most areas for land leased on a year to year basis for farming or grazing purposes, the common law six months' notice requirement is no longer reasonable for other types of leases in light of extensive statutory changes as to the period of notice required to terminate a tenancy from year to year. For property not leased for farming or grazing purposes, a month's notice prior to the end of the period, when the period is a month or more, is adequate in all cases, and should be adopted judicially in the absence of an agreement by the parties for some other notice requirement."
[18] As noted above, Gulf Coast Realty further argues that it presented evidence creating a genuine issue of material fact as to whether it has paid the $10 annual rent. However, we have concluded that Admiral's Quarters and Tidewater were legally entitled to possession of the office units after giving proper notice of termination, whether or not Gulf Coast Realty was in breach of the lease for a failure to pay the $10 annual rent. Therefore, it is immaterial whether the annual rent was in fact paid, and proof that it has been paid does not preclude the entry of summary judgments in favor of Admiral's Quarters and Tidewater.