185 So. 181

## RICKENBAUGH v. ASBURY.

### 8 Div. 731.

Court of Appeals of Alabama.

Oct. 4, 1938.

Rehearing Denied Nov. 15, 1938.

Merwin T. Koonce, A. A. Williams, and L. R. Timberlake, all of Florence, for appellant.

R. L. Polk, of Sheffield, and T. M. Thomas, of Florence, for appellee.

378

SAMFORD, Judge.

This is the second appeal in this case, Asbury v. Mountz, 234 Ala. 553, 176 So. 282.

On former appeal the question raised by the plea of statute of limitations was settled against the contention of this appellant, and the facts on this appeal on that question seem to be the same as there recited.

This suit was originally brought by the plaintiff against Mrs. Ella J. Mountz, and pending the litigation Mrs. Mountz died. The case is now revived in the name of Mrs. Viola G. Rickenbaugh, as Executrix, etc.

The complaint as finally amended contains counts 1, 3, 4, 5 and 6; to which were pleaded pleas 1, 2 and 7. All of the counts claimed damages for a breach of a contract executed by Koonce Real Estate Co., by J. F. Koonce, acting within the line and scope of its authority as agent for Mrs. Mountz. It is claimed in various ways in the complaint that the original contract with the plaintiff was made by Koonce Real Estate Co., acting under a power of attorney given to J. F. Koonce by Mrs. Mountz. Demurrers to counts 1, 3, 4, 5 and 6 were overruled by the court; whereupon the defendant filed pleas 1 and 2 of the general issue and pleas 5, 6 and 7. Demurrer to plea 7 was overruled. Replications 1, 2, 3 and 4 were filed to plea 7, and defendant's demurrers to 'replications 2, 3 and 4 were sustained and overruled as to replication 1. Issue was joined as above indicated.

■ There are twenty-nine assignments of error in the record, but the assignments of error insisted upon in appellant's brief consist of the following: 1, 2, 3, 4, 5, 6 and 7. (The foregoing numbers appearing in appellant's brief in Roman numerals.) The remaining assignments of error, under the rule, are therefore waived.

In April, 1924, Ella J. Mountz was the owner of a tract of land on the Lee Highway, which was subdivided into lots and designated as "Lee Highway Heights", situated in Lauderdale County, Alabama. At or about this time, the subdivision was placed in the hands of Koonce Real Estate Co. for sale to such parties as desired to purchase lots in said subdivision. At that time Mrs. Mountz executed and delivered to Koonce Real Estate Co. a certain power of attorney. In words and figures as follows:

"State of Pennsylvania, Clearfield County.

"Know all men by these presents, that I, Ella J. Mountz, of Smithmill, Clearfield County, Pennsylvania, do hereby constitute and appoint J. F. Koonce, of Florence, Alabama, my true and lawful attorney. for me and in my name and behalf to grant, bargain and sell, and to execute deeds to any lot or lots, which the said J. F. Koonce may wish to convey in what is known as Lee Highway Heights subdivision in Lauderdale County, Alabama, the said J. F. Koonce having full and complete authority to sign my name to such deed or deeds.

"Given under my hand this 15th day of March, 1924.

"Ella J. Mountz (Seal)."

This power of attorney was duly acknowledged and recorded by Koonce Real Estate Co. At the same time there was prepared by Koonce Real Estate Co. a

form to be used by Koonce Real Estate Co. in the sale of said property. In words and figures as follows:

"Contract of Purchase—Lee Highway
           Heights
"The State of Alabama
"Lauderdale County
                   "Florence, Alabama,
           "———, 19—.

"In consideration of the sum of ——— dollars, received of ——— as part payment on the following described lots in Lee Highway Heights, in Lauderdale County, Alabama, as platted by Evans and Meade, engineers, which plat is recorded in the office of the Probate Judge of Lauderdale County at the Courthouse at Florence, Alabama, ———, ——— which we have this day sold to the said ——— on the following terms ——— said payments evidenced by notes of even date herewith. In case of non-payment of any of said payments thirty days after maturity the whole of said indebtedness shall, at option of payee, become due and payable and the purchaser forfeits all rights in this contract and the payee, shall, at her option, consider the money paid as rent on above described property or extend time of payment if, in her belief, circumstances warrant.

"Upon the payment of said notes with interest, seller guarantees to deliver to buyer merchantable warranty deed and abstract of title, said warranty deed is herewith placed in escrow at the Alabama Trust and Savings Bank, Florence, Alabama.

"Buyer herewith agrees for himself, his heirs and assigns not to erect any dwelling or business buildings on above described property costing less than $1,200, and not to sell, lease or rent the above property to anyone but a member of the Caucasian race.

"Seller guarantees graded streets in Lee Highway Heights and water for domestic purposes.

"I, we, hereby agree to above terms and conditions of this sale.
                   "Mrs. Ella Mountz, Seller."

Mrs. Mountz being fully advised as to the partnership of Koonce Real Estate Co. and the terms under which said property should be sold, and also of the contents of the form agreed upon between Mrs. Mountz and Koonce Real Estate Co. to be used in sales of said property.

On April 21, 1924, the plaintiff in this case contracted to purchase one of the lots hereinabove referred to, and entered into a contract similar to the contract above set out and approved by the defendant, Mrs. Mountz. This contract called for payment of $100 and deferred payments of $20 per month, with interest, which were signed by the plaintiff and "Koonce Real Estate Co., Authorized Agents, per J. F. Koonce." The contract was duly recorded in the Probate Office. The plaintiff complied with her part of the contract by making the deferred payments, and the seller, Mrs. Mountz, executed a deed conveying the lot purchased to the plaintiff on the 15th day of March, 1936. This deed was joined in by D. J. Mountz, the husband of Mrs. Mountz, and was duly acknowledged and recorded.

The evidence is without dispute that Mrs. Mountz failed to comply with that part of the contract of purchase which provides: "Seller guarantees * * * water for domestic purposes." It is also without dispute that before the bringing of this suit the plaintiff demanded of Mrs. Mountz that she comply with the terms of her contract and that she has never done so.

Each of the counts of the complaint allege a contract binding on plaintiff and defendant, a breach of that contract by defendant and a resultant damage to plaintiff. Only one contract is alleged and only one recovery is sought.

Each of the counts to which pleas were interposed and upon which the trial was had sufficiently stated the cause of action; that is, a binding contract and a breach of the guarantee for a supply of water for domestic purposes.

■■■ The contract of sale having been made on the part of Mrs. Mountz, either directly or by a person duly authorized by her, the purchase money having been paid by the buyer, and the buyer placed in possession of the property, takes the transaction from under the influence of Section 8034 of the Code of 1923. The provision in Subdivision 5 of the Statute of Frauds (Code of 1923, Section 8034) causes the Section to differ from the English Statute and the Statute of 1803 as contained in Clay's Digest, p. 254, et seq. Phillips v. Adams, 70 Ala. 373. The contract of sale having been made, the purchase price fully paid, and the purchaser placed in possession of the property, with full knowledge on the part of the seller as to the terms and conditions, con-

stitutes a ratification of the acts of Koonce Real Estate Co. and of J. F. Koonce in making the sale. The payment of the purchase price may be shown by the testimony, independent of any writing, and it does not matter whether possession is first taken or whether payment on property thereof is made first. City Loan & Banking Co. v. Poole, 149 Ala. 164, 43 So. 13.

The execution and delivery of the deed to the plaintiff by Mrs. Mountz, and the acceptance of the deed by plaintiff, does not destroy the obligation of the seller under the contract of sale. The execution and delivery of the deed was a part of defendant's obligation under the contract and when she did that she was only complying with a part of the contract, which in no wise relieved her of the obligation to furnish the seller with water for domestic purposes.

It is contended by the appellant that the contract alleged to have been breached is not signed by the party making this sale, or by any person lawfully authorized, in writing. If such were a fact, then of course the defendant would not be bound unless with a full knowledge of all the facts she ratified the transaction and received the money therefor. From the facts as disclosed from this record, the jury was authorized to find that the contract of sale was made on the part of Mrs. Mountz by J. F. Koonce, through his firm, which was Koonce Real Estate Co. The power of attorney undoubtedly gave Koonce the right to make the contract in the name of Mrs. Mountz; she having furnished to Koonce, by agreement with a member of the Firm, the form of the contract to be taken in the sale of the lots. Moreover, it appears that this form of contract agreed upon between Koonce Real Estate Co. and Mrs. Mountz, and furnished to Koonce Real Estate Co. for the making of sales, had printed on it Mrs. Mountz's name as the seller of the property.

It is contended by appellant that the contract alleged to have been breached must have been signed by Mrs. Mountz, or by her lawful agent, in writing, and unless so executed is void. Abstractly, the foregoing is a true statement of the law, but as Koonce Real Estate Co., designating itself as the agent of Mrs. Mountz, made the contract of sale, and, with a full knowledge on the part of Mrs. Mountz, she ratified the same, accepting the benefits under it, she made it her contract and she became bound by its terms. She cannot accept benefits and re-

pudiate the obligation. There is ample evidence in the record to bear out this theory of the case.

As has already been seen, the court did not err in refusing to give at the request of the defendant the general affirmative charge.

"It is, also urged that the contract alleged to have been breached was denied by sworn plea of non est factum, and the burden of proof was on plaintiff to produce the proof of execution of the contract, and the court was in error in refusing to instruct the jury to that effect."

By given Charge "G", the court did charge the jury as to the burden of proof relating to plea 7, which was the plea of non est factum.

It is insisted by appellant that the deed from Mrs. Mountz to this plaintiff was not admissible in evidence, for the reason that it appeared to be a separate transaction from the sale as noted in the contract of sale. There might have been some pith in this contention, but for the fact that the entire evidence in this case discloses that there was but one transaction between the parties: the lot sold, the lot purchased, and the plaintiff in the case directly identifying the lot as described in deed as the lot as described in the contract of sale. The difference in phraseology being by reason of the fact the land had been resurveyed and renumbered.

The foregoing will emphasize the necessity for the copy of the map introduced in evidence without objection and omitted from the record in this case. The fact precludes this court from passing upon questions dependent upon a consideration of the whole evidence. Godfrey v. Vinson, 215 Ala. 166, 110 So. 13.

Other letters and papers introduced in evidence were properly identified and proper predicate laid. All of these letters and papers were referrable to the issues as made by the pleadings.

The court charged the jury that the measure of damages in this case was the difference between the value of the lot sold with and without the water contracted for in the sale of property at the time of breach. This is the general rule as laid by the best authorities. 2nd Volume Sedgwick on Damages, Sections 633 d & e. However, this rule has its limitations and is well stated in the text, 17 C.J. 844 (166)C, as follows: "Definite rules which will measure the ex-

tent of recovery in all cases even of a particular class are difficult to formulate owing to the consideration which must be given in each case to its specific and perhaps peculiar surrounding circumstances. Stated in broad terms, however, the measure of damages is such sum as will compensate the person injured for the loss sustained, with the least burden to the wrongdoer consistent with the idea of fair compensation, *and with the duty upon the person injured* to exercise reasonable care to mitigate the injury, according to the opportunities that may fairly be or appear to be within his reach, and the same rule obtains whether the loss is claimed for injury to property, personal injury, or breach of contract." (Italics ours.)

█ The peculiar circumstances surrounding this transaction require the application of this rule, as was done in the case of Gagnon v. Molden, 15 Idaho, 727, 99 P. 965. In this case there was involved a contract of sale and an agreement by the seller to furnish water of a certain quantity. The court stated in its opinion [page 967]: "The proper measure of damages in such case would be the difference between the contract price for the water and water right and its delivery upon the land, and the price that it would cost to purchase a like water right and equal number of inches of water delivered upon his land at the time of the breach of the contract."

This ruling recognizes the principle that it is the duty of a party injured by the breach of a contract to exercise reasonable diligence to minimize the damages. The purpose of the law is to compensate the injured party for the breach of the contract and not to penalize beyond a just compensation.

In the instant case the sale price of the lot was Five Hundred ($500.00) Dollars with water "for domestic purposes." It is conceded that the digging of a well furnishing such water on the premises would be a compliance with the terms of the contract. The contract of sale was made in 1924, and it appears that the defendant never made any effort to comply with the obligation to furnish water "for domestic purposes". After the signing of the contract and a reasonable time thereafter the contract was breached by the defendant. Instead of demanding performance, the plaintiff continued to make the monthly payments of twenty ($20) dollars until the purchase money had all been paid, and then, without protest, received a deed to the lot and went into possession. It was some ten years after full payment was made, deed executed and possession given,

that plaintiff began complaint about the water supply. It was the duty of the defendant to have supplied this water, but, failing to do so, it was the duty of plaintiff to minimize the damage by using reasonable diligence to procure a domestic supply of water provided for by the contract, after defendant had made default.

█ The cost of supplying this water would have been an element of damage and coupled with reduced value of the lot in its use pending the default would constitute another element of damage, and the two together would be the measure of damages to which the plaintiff would be entitled.

The plaintiff cannot enjoy the possession of the lot and the fee simple title, and after years of possession and peaceful enjoyment continue to own the lot and recover damages in excess of the original purchase price.

In the instant case that part of the contract involved in this suit was the agreement "to furnish water for domestic purposes." Upon a failure of defendant to perform this service it became the duty of plaintiff to minimize the loss, or he might sue and recover the cost, having done what the defendant agreed to do, coupled with such other elements of damage as would be compensation of the parties at the time of the making of the contract. This principle is recognized in numerous cases cited in 2nd Volume Sedgwick on Damages, p. 618.

The ruling of the court on these questions was not in line with the foregoing. The measure of damage was not fully stated as it should have been.

The damages awarded by the jury were excessive, and on that ground the defendant was entitled to a new trial.

For the errors pointed out the judgment is reversed and the cause is remanded.

Reversed and remanded.

### On Rehearing.

In reviewing the record in this case and entertaining the view that the motion was without merit, we did not enter into a discussion of the motion as filed. It is now insisted on application for rehearing that this court should have granted the motion to strike the bill of exceptions.

█ After judgment was rendered, and pending appeal, the defendant died. Before the cause had been revived in the name of executor, the bill of exceptions was prepared by the attorneys representing the de-

fendant, and presented to the trial judge, who signed the same as being a true bill of exceptions. All of which was done within the time allowed by law. Such bill of exceptions, so signed and filed, thereby became a part of the record to be used on appeal, if, and when, the cause was revived by order of the appellate court, which revivor was had on motion filed in this court on April 28th, 1938, after the appointment of the executrix on the 27th day of April, 1938.

We recognize the rule as laid down in McDonald v. Womack, 214 Ala. 309, 107 So. 812; that the death of the defendant in the court below revoked all agency of her attorneys to appear for her in seeking any order, either in the trial court or in this court, but the preparation of a bill of exceptions is not a judicial action in the sense of adjudging or enforcing the rights of the parties. The bill of exceptions, so prepared and signed, could and was adopted by the executrix when she was substituted for the original appellant.

The office and purpose of a bill of exceptions is to afford the appellate court a history of the proceedings below, and when such bill of exceptions has been prepared and signed by the trial judge with his certificate, and within the time allowed by law, such bill becomes a part of the proceedings to be included in the record. Decatur Water Works Co. v. Foster, 161 Ala. 176, 49 So. 759; Sovereign Camp, W.O.W., v. Gay, 20 Ala.App. 650, 104 So. 895; Ex parte Gay, 213 Ala. 5, 104 So. 898.

The death of the defendant in the lower court discharging the agency of her attorneys on the trial would not prevent them from preparing and presenting to the Judge a bill of exceptions to be signed by him, that the true history of the case might be preserved.

The motion to strike the bill of exceptions is overruled.