54 So.2d 471

**MARTIN v. BRASHER et al.**

**7 Div. 100.**

Court of Appeals of Alabama.

Oct. 2, 1951.

232

---

Chas. Thomason, Anniston, for appellant.

Max W. Matthews, Anniston, for appellees.

HARWOOD, Judge.

The complaint filed in this suit sought damages for an alleged breach of a contract for the sale of certain real estate in or near Weaver in Calhoun County. The contract contained a clause to the effect that "Seller to furnish said house with a well that will supply water for house not later than August 15, 1949." Plaintiff avers that the defendant did not furnish said house with such a well. Plaintiff further averred that he was also damaged by being inconvenienced and was caused to lose time from his work, and put to expense, as a result of having to haul water to supply his needs in said house.

The evidence presented by the plaintiff tended to show that the defendant began digging a well for the house about the 12th of August, and that the well was dug to a depth of 56 feet. The plaintiff further testified however that water only came in the well in wet weather and then as seepage water, and even then was never more than six inches in depth.

For the defense Karin Dothard testified that he was a well digger by occupation, and had been for twenty years or more. He began digging the well in question in July, and dug it to a depth of 50 or 52 feet. He first found water at a depth of 40 feet, and had to quit digging because of the water. He went back four or five more times, and dug the well deeper, and each time he would get more water. That the last time he dug the water "was really a vein," and the water in the well came out of the bottom of the well, and did not seep in from the top. The record shows that this witness further testified as follows:

"Q. (By Mr. Thomason) Do you have any idea of what it cost to dig or drill a well 50 to 52 feet deep to get water in rock formations like that? A. Yes, it would cost a fellow two or three hundred dollars by the time he got through with it, or more.

"Q. Do you have any idea how much it would cost to complete that well, or get water again in it; in dollars and cents to complete that well and get water again? A. Well, I imagine it wouldn't cost very much, as much water as there was when we quit—probably two feet further."

The defendant testified that he had the well begun on the premises about the 1st of July, before his sale to the plaintiff. That water was first struck around the 16th of July and in such quantity that he told the diggers to come out because they could not work. This water came from a vein and was not seepage, as the well was being dug during dry weather.

Later the plaintiff told him the water had sunk in the well, and he sent a well digger back several times.

The defendant further testified that he had dug wells, and was an experienced well

digger, and that it costs about $4 to $4.50 per foot to dig a well where it is necessary to go through rock, and about $3 per foot where there is no rock.

The jury returned a verdict in favor of the plaintiffs, and assessed their damages at $500.

The defendant thereafter filed his motion for a new trial, which motion was denied by the court.

Among the grounds asserted in the motion for the new trial, and also argued here, was that the damages awarded were excessive.

We think this contention by the appellant is meritorious, for the reason that in the trial below the plaintiff presented no evidence from which the jury could rationally have determined the amount of the damages suffered by the plaintiffs. Under the evidence the plaintiffs, because of this failure of evidence, were entitled only to nominal damages.

In connection with the damages which the plaintiffs claim because of inconvenience, expense in hauling water, and loss from employment, the plaintiff S. W. Brasher testified that on 15 August 1949, and thereafter, he was employed from 7 A.M. to 5 P.M. at $1.25 per hour, and that as a result of having to haul water to his house he lost time from his employment; that he hauled the water in his automobile and paid for the gasoline so used, and the upkeep of his automobile. No evidence whatsoever was elicited from this witness as to the amount of time he lost from his employment because of hauling water to his house, nor of the amount or cost of the gasoline or upkeep of his automobile in this endeavor. No basis was present upon which the jury could have determined damages for these elements of claimed injury, other than surmise and guesswork.

As to the proof of damages for the breach of the contract generally, it was apparently the view of plaintiffs' counsel, and of the court, that the measure of these damages was the market value of the premises with a well, and the market value without a well.

In attempting to establish these values the plaintiff offered Mr. George Carnes, a real estate dealer of Anniston. Mr. Carnes testified that he had sold property at Weaver, and was familiar with property at Weaver to some extent; that it was his understanding that there were no water works at Weaver, and that all the property he had seen there had wells. The record then shows that Mr. Carnes testified as follows:

"Q. Now, Mr. Carnes, based on your judgment and experience with property in Weaver, Alabama, what would be your opinion as to the difference in the reasonable market value of a piece of property with a well on it and one that had no well from which water could be used for household purposes?

"Mr. Thomason: Object on the grounds that the witness hasn't been properly qualified as to the—it hasn't been shown what it costs to drill a well or place a well on the property.

"The Court: Overruled.

"Mr. Thomason: Except.

"The Witness: It is a question, I would say, that involves some calculations—what is the property selling for?

"Q. (By Mr. Williams) Just answer my question?

"The Court: Read the question to him.

"(The last preceding question was read to the witness, as requested.)

"Mr. Thomason: Object on the further ground it hasn't been shown how much the property would be valued at with a well.

"The Court: Overruled.

"Mr. Thomason: Except.

"The Witness: I would say from five to seven hundred dollars, on an average; that varies because the cost of digging or boring a well—some times they run into rock, and it might cost a thousand dollars, and perhaps at other times it could be drilled for less money.

"Mr. Williams: That's all."

Nowhere in the above testimony does Mr. Carnes disclose any knowledge as to the specific property involved in this litigation. His testimony pertains only to

"a piece of property" in Weaver. This generalization can be of little probative force in determining damages to plaintiffs' specific property. As stated by Mr. Wigmore, "a person making an estimate as—to value, must possess a double knowledge —(1) a knowledge of—the standard by which it is to be tested, and (2) a knowledge of the thing itself to be classed or measured or tested. See Wigmore on Ev., 3rd Ed. Vol. III, Sec. 720.

Testimony of a witness as to the reasonable market value of other like property in the same community is admissible for the purpose of testing the competency of the witness as to values, and as affording a criterion from which the value of the property in question may be deduced. Bynum Bros. v. State, 216 Ala. 102, 112 So. 348, and cases therein cited. The eliciting of testimony of this nature from a witness cannot however supply the necessity of evidence of value as to the property directly involved in the litigation.

As can be seen therefore, there was an absence of evidence from which the amount of damage suffered by the plaintiffs could rationally be deduced. True, the plaintiffs' evidence did tend to establish some damage. In the absence of evidence tending reasonably to show the amount of damage the plaintiffs could only recover nominal damages. Any amount above nominal damages would therefore, under the evidence presented, be excessive.

Other than the special damages pleaded by the plaintiffs, the damage suffered by the plaintiffs resulted essentially from the defendant's failure to supply water. The measure of damages in such cases is difficult to formulate because of the varying facts present in this type of case. Each of such cases, as to assessing damages, must be particularized to the various and varying facts. Some assistance can be furnished the lower court, in event of another trial, from the principles enunciated by this court in the case of Rickenbaugh v. Asbury, 28 Ala.App. 375, 185 So. 181, certiorari denied 237 Ala. 7, 185 So. 187.

Reversed and remanded.