PITTMAN, Judge.
 

 These appeals, which were transferred to this court by the Alabama Supreme Court pursuant to Ala.Code 1975, § 12-2-7(6), concern the purchase of a particular parcel of real property as to which a stranger to that transaction had apparently been previously granted a “right of first refusal” allowing him, at his option, to purchase the parcel should an agreement to convey the parcel be reached between its owner and any buyer.
 

 In May 2005, Michael A. Wilson filed a complaint in the Lee Circuit Court naming as defendants Rodney C. Jones and William C. Starr, Sr., and seeking both equitable relief and damages based upon substantive claims of breach of contract, intentional interference with business or contractual relations, and conspiracy to commit a lawful act by unlawful means. In his complaint, Wilson averred that he and Jones had entered into an agreement to convey a parcel of real property from Jones to Wilson (which other portions of the record identify as “Lot 2-B” of a particular subdivision in Auburn) and that the parties had simultaneously agreed that Wilson would be afforded a “right of first refusal” allowing him a right to purchase a second, adjoining parcel in that subdivision (“Lot 2-A”). According to the complaint, Jones breached the agreement by conveying Lot 2-A to Starr without notifying Wilson or permitting him to exercise the claimed right of first refusal. Wilson sought, among other things, a trial by jury, an award of damages, temporary and permanent injunctive relief, and a judgment directing specific performance of the alleged agreement under which Wilson claimed the right of first refusal. Jones and Starr filed answers to the complaint; Starr’s answer included a claim under the Alabama Litigation Accountability Act, Ala.Code 1975, § 12-19-270 et seq. (“the ALAA”). After those answers were filed and a hearing was held, the trial court entered a preliminary injunction in July 2005 preventing Starr from encumbering, selling, improving, or changing Lot 2-A and requiring Wilson to post an injunction bond.
 

 In June 2006, Starr filed a counterclaim
 
 [1]
 
 against Wilson in which Starr averred that Wilson had recorded the agreement containing the right of first refusal after Starr had purchased Lot 2-A from Jones; that pleading reasserted Starr’s ALAA claim and asserted new claims of intentional interference with business or contractual relations and slander of title. Starr subsequently asserted a
 
 *850
 
 cross-claim against Jones and various fictitiously named defendants asserting claims of negligence and fraud, and Jones asserted a cross-claim against Starr and a third-party claim against Starr’s attorney, Stephen D. Benson, asserting claims of breach of contract, fraud, and intentional interference with business or contractual relations; all parties filed responses to those pleadings, and Benson and Starr asserted ALAA counterclaims against Jones.
 

 After discovery had taken place, Benson filed a motion for a summary judgment as to Jones’s third-party claim and Starr filed a motion for a summary judgment on the claims brought against him by Wilson in his complaint and by Jones in his cross-claim. Wilson voluntarily dropped his conspiracy claim at that point. Following a hearing, the trial court rendered a summary judgment dissolving the preliminary injunction and determining that the claimed right of first refusal was void and that therefore, as a matter of law, Wilson had no valid claims against Jones or Starr; however, the trial court also released Wilson from the injunction bond, denied all requests for awards of attorney fees and costs, and ordered that all “other actions pending in [the] case”
 
 (ie.,
 
 all other claims) be “dismissed” as “moot.” That judgment was entered on November 6, 2007.
 

 On November 27, 2007, Starr filed a postjudgment motion requesting, among other things, that the trial court “reinstate” his counterclaim against Wilson. On December 5, 2007, Benson filed a similar postjudgment motion to “reinstate” his ALAA counterclaim against Jones. On December 6, 2007, Wilson filed a post-judgment motion requesting that the trial court vacate its judgment to the extent that it denied his claims. The trial court directed the parties to file responses to the postjudgment motions and indicated that it would permit oral argument on the motions. Starr filed a notice of appeal on December 18, 2007, which this court docketed as case no. 2070281; pursuant to Rule 4(a)(5), Ala. R.App. P., that appeal was held in abeyance pending a decision regarding the outstanding postjudgment motions.
 

 Although the trial court held a hearing on the postjudgment motions and may have indicated an intent to grant certain aspects of the relief requested by Starr and Benson, no order granting or denying any of the postjudgment motions was entered within 90 days of their respective filing dates. Thus, each motion was denied, pursuant to Rule 59.1, Ala. R. Civ. P., as of the 90th day following its filing,
 
 see Roden v. Roden,
 
 937 So.2d 83, 85 (Ala.Civ.App.2006), and the trial court’s subsequent order purporting to grant Starr’s and Benson’s postjudgment motions and to deny Wilson’s postjudgment motion was a nullity.
 
 See United States Steel Corp. v. McBrayer,
 
 908 So.2d 947, 951 (Ala.Civ.App.2005), and
 
 Moragne v. Moragne,
 
 888 So.2d 1280, 1282 (Ala.Civ.App.2004). Wilson filed a timely notice of appeal on April 16, 2008, 42 days after the denial of his postjudgment motion
 
 (see
 
 Rule 4(a)(3), Ala. R.App. P.); that appeal was docketed as case no. 2070731 in this court. Because neither Jones nor Benson have appealed from the trial court’s judgment, the correctness of the trial court’s judgment as to their claims against each other and as to Jones’s claims against Starr is not presented for review.
 

 Wilson’s appeal challenges the correctness of the trial court’s rulings as to his breach-of-contract claim against Jones and his intentional-interference claim against Starr. Starr’s appeal challenges the correctness of the trial court’s ruling as to the claims asserted against Wilson in Starr’s counterclaim.
 

 
 *851
 
 We will first consider the correctness of the summary judgment against Wilson on his breach-of-contract claim against Jones. Our standard of review is well settled:
 

 “An appellate court reviews a summary judgment by the same standard the tidal court uses in determining whether to grant a summary-judgment motion.
 
 Pryor v. Brown & Root USA, Inc.,
 
 674 So.2d 45, 47 (Ala.1995);
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala.1988). A summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The movant has the burden of making a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989). If the moving party makes that prima facie showing, then the burden shifts to the nonmoving party, who then has the burden of presenting substantial evidence creating a genuine issue of material fact.
 
 Id.
 
 In determining whether the evidence creates a genuine issue of material fact, this court must review the record in the light most favorable to the non-movant and must resolve all reasonable doubts against the movant.
 
 Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co.,
 
 622 So.2d 314 (Ala.1993). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).”
 

 Millican v. McKinney,
 
 886 So.2d 841, 843 (AIa.Civ.App.2003).
 

 Viewed in a light most favorable to Wilson, the record reveals the following facts. On August 28, 2003, Jones and Wilson, in their individual capacities, entered into a written contract that provided, in pertinent part, that in consideration for a total payment of $250,000 (including an earnest-money payment of $3,000), Jones would convey Lot 2-B to Wilson and would grant Wilson a right of first refusal as to Lot 2-A. That contract stated:
 

 “1.
 
 DESCRIPTION:
 
 SELLER [i.e., Jones] shall sell to PURCHASER [i.e., Wilson] and [Wilson] shall purchase from [Jones] the real estate located on Webster Road in Auburn, Alabama described as follows ... [legal description of Lot 2-B],
 

 “2.
 
 PURCHASE PRICE:
 
 The purchase price is $250,000.00, payable $3,000.00 as earnest money upon execution of this Agreement by [Jones], receipt of which' is hereby acknowledged by [Jones], and the remainder of $247,000.00 payable in full upon consummation of this sale.
 

 “3.
 
 CLOSING:
 
 This sale shall be closed on or before 90 days from and after the date this Agreement is signed by [Jones] which is the date of this Agreement as hereinabove set forth. The closing shall be at a place, date and time to be designated by [Wilson] and [Wilson] shall give [Jones] written notice of same no later than 5 days prior to the closing date. [Jones] shall give possession of said property to [Wilson] at closing.
 

 “4.
 
 DEFAULT:
 
 In the event [Wilson] fails to carry out and perform the terms of this Agreement for any reason except default of [Jones], he shall forfeit the above stated earnest money which shall be retained by or for the account of [Jones] as consideration for the execution of this contract and as agreed liquidated damages and in full settlement for any claims for damages, and [Jones]
 
 *852
 
 agrees to cancel this contract. If [Jones] fails to perform any of the covenants of this contract, the aforesaid earnest money and the consideration for any closing date extension paid by [Wilson], at the option of [Wilson], shall be returned to him on demand; or [Wilson] shall have only the right of specific performance.
 

 “5.
 
 EXTENSION:
 
 [Wilson] shall have the right to extend the closing date of this transaction an additional 30 days beyond the original 90-day period as hereinabove provided, upon giving written notice to [Jones] on or before the end of said 90-day period and upon paying to [Jones] simultaneously with giving said notice the sum of $2,000.00 in consideration for granting the 30-day extension. Said $2,000.00 payment is not part of and shall not apply to the above stated purchase price and is fully nonrefundable.
 

 [[Image here]]
 

 “9.
 
 TIME IS OF THE ESSENCE:
 
 Time is of the essence for this Sale and Purchase Agreement.
 

 [[Image here]]
 

 “14.
 
 OTHER AGREEMENTS:
 
 No agreements or representations, unless incorporated in this contract, shall be binding upon either of the parties.
 

 “15.
 
 RIGHT OF FIRST REFUSAL-OTHER PROPERTY:
 
 [Jones] owns a lot adjacent to [Lot 2-B] located on the north side thereof and described as Lot [2-A], In addition to the sale and conveyance hereinabove described and as part of the consideration for the $250,000.00 to be paid by [Wilson] to [Jones], [Jones] also agrees to and does hereby grant to [Wilson] a Right of First Refusal to purchase said lot together with all improvements located thereon and appurtenances thereto appertaining. In the event [Jones] shall receive from a third party at any time[ ] a bona fide offer to purchase said Lot 2-A, whether such price be first fixed by [Jones] or the third party, and [Jones] shall decide to sell the same for such amount, [Jones] shall promptly give [Wilson] written notice of the terms of such offer and of his willingness to sell for the price offered, and [Wilson] shall have the first refusal and privilege of purchasing said property at such price. Within 15 days of receiving said written notice from [Jones], [Wilson] shall give written notice to [Jones] of his intention to exercise his right of refusal and to purchase the property for such amount offered by the third party, and [Wilson] shall have 30 days from providing said written notice to [Jones] to close the purchase at that price. In the event [Wilson] shall fail to give [Jones] written notice of his intention to exercise his right of refusal within 15 days of receiving notice from [Jones] of the third party offer, [Wilson] shall not be obligated to purchase and [Jones] may thereafter sell said property to the third party making the original offer. ... This Right of First Refusal granted herein is for a five-year period only and shall terminate and become null and void five (5) years from the date of the parties^] closing of the sale and the purchase of [Lot 2-B].”
 

 Jones did not convey Lot 2-B to Wilson within 90 days of the execution of the contract for sale, and it does not appear that Wilson paid additional consideration to Jones to obtain the automatic 30-day extension as provided in the contract. However, on January 15, 2004, Jones
 
 did
 
 convey Lot 2-B via a warranty deed naming as grantee a limited-liability company, “Affordable Self Storage, LLC” (“Affordable”), in which Wilson apparently had a controlling ownership interest. That deed
 
 *853
 
 did not refer to the August 28, 2003, contract between Jones and Wilson and did not contain a right of first refusal.
 

 On April 21, 2005, Starr was telephoned by an area real-estate agent who stated that he could sell Starr Lot 2-A; that lot was adjacent to a parcel already owned by Starr. Starr and the agent immediately agreed on a price ($425,000) and sought to close a purchase transaction swiftly. On April 22, 2005, Jones purported to convey Lot 2-A to Starr via a quitclaim deed; Jones admitted in his answer that that purported conveyance of Lot 2-A had not been in conformity with the contractual right of first refusal and that out of “absent mindedness” he had “failed to recall the right of first refusal existed.”
 

 On April 25, 2005, after becoming aware of Starr’s attempt to purchase Lot 2-A, Wilson orally notified Jones that he intended to exercise the right of first refusal; that notice was given three days after Jones had executed the deed to Lot 2-A and one day after he had delivered it to Benson. In response to Wilson’s oral notice, Jones attempted to notify the real-estate agent and Benson of the existence of the right of first refusal and apparently unsuccessfully sought to prevent Benson from delivering the deed to Starr. Although disputed, there is evidence in the record indicating that some sort of oral agreement between attorneys representing Wilson and Starr was reached under which Starr would agree to convey Lot 2-A to Wilson; Starr, for his part, denied both the existence of and the validity of any such alleged agreement. On April 27, 2005, Jones wrote Wilson a letter in which he stated that he had a contract to sell Lot 2-A at a price of $425,000, requested that Wilson “accept this as your notice of right of first refusal” as to Lot 2-A, and asked Wilson to “exercise your right within the contracted time period.” One day later, on April 28, 2005, Starr recorded the April 22, 2005, deed of Lot 2-A from Jones.
 

 In entering its summary judgment against Wilson, the trial court concluded that Wilson did not have a valid right of first refusal
 
 [2]
 
 as to Lot 2-A because the August 28, 2003, sales agreement was void. The trial court made that voidness determination on several stated grounds, including (a) lack of consideration, (b) failure of the parties to consummate their agreement within the times set forth in the agreement, and (c) the conveyance of Lot 2-B to Affordable rather than Wilson. However, none of the reasons stated by the trial court supports the summary judgment against Wilson on his claims against Jones.
 

 We first consider the issue of lack of consideration. The trial court, in its judgment, cited
 
 Gulf Coast Realty Co. v. Professional Real Estate Partners, Inc.,
 
 926 So.2d 992, 1000 (Ala.2005), which cited a trial court’s opinion that had relied on
 
 Foy v. Foy,
 
 484 So.2d 439, 442 (Ala.1986), as support for the proposition that “ ‘consideration for [an] option is a thing apart from the consideration for the sale of the land.’ ” However, the trial court in this case failed to note that in
 
 Gulf Coast
 
 the Supreme Court
 
 distinguished Foy
 
 and held that a development agreement containing a number of mutual covenants, including an option to purchase, was sup
 
 *854
 
 ported by consideration even though the agreement did not separately state consideration for the option; the Supreme Court stressed that, to the extent that its previous cases had required a “separate expression of consideration” for an option, that requirement “applies only to option contracts that are
 
 nudum pactum
 
 on their face, that is, those contracts that constitute only gratuitous promises by the would-be seller and thus fail for lack of consideration.” 926 So.2d at 1001.
 

 In contrast, the Supreme Court in
 
 Gulf Coast
 
 cited with approval its decision in
 
 Rice v. Sinclair Refining Co.,
 
 256 Ala. 565, 56 So.2d 647 (1952), in which it was held that a lease and its amendments that contained an option to purchase constituted a single contract and that payment of rent under the lease provisions of the contract was consideration that was “sufficient to support the option to purchase under the contract so that it [could not] be withdrawn during the period specified for its continuance.”
 
 Rice,
 
 256 Ala. at 573, 56 So.2d at 653. Thus, the proper rule is that stated by a noted treatise on the law of contracts:
 

 “[W]here the option is simply a subsidiary part of a larger transaction, ... the consideration for the option is seldom a definitely determinable portion of what the option holder gives to the other party.
 
 It is not at all necessary for the parties to agree upon such a division of the total consideration given by the option holder. It is not necessary for either the parties or the court to make a separate valuation of the option in order that it should be enforceable.”
 

 3 Eric M. Holmes,
 
 Corbin on Contracts
 
 § 11.7 (Rev. ed. 1996) (emphasis added);
 
 accord HGS Homes, Inc. v. Kelly Residential Group, Inc.,
 
 948 S.W.2d 251, 255 (Mo.Ct.App.1997). The failure of the August 28, 2003, agreement to separately enumerate consideration for the right of first refusal thus does not, as a matter of law, render the agreement void for lack of consideration.
 

 Another rationale advanced by the trial court in support of the summary judgment against Wilson on his breaeh-of-contract claim against Jones is the failure of the parties to consummate the sale of Lot 2-B within the 90-day period set forth in the agreement or any potential extension thereof. As we have noted, the agreement between Wilson and Jones provided that “[t]his sale
 
 shall be closed
 
 on or before 90 days” after the date Jones signed it,
 
 i.e.,
 
 August 28, 2003, or alternatively as much as 30 days later had Wilson paid an additional $2,000 to Jones (emphasis added); it further provided that time was of the essence of the contract. However, Lot 2-B was not conveyed until January 15, 2004, after the expiration of the contractual 90-day closing period (or a 30-day extension thereof).
 

 Those facts, however, do not compel a conclusion that the entire contract automatically terminated and was of no force and effect after the 90-day closing period had expired. It is well settled under Alabama law that “[e]ven where time is expressly declared to be of the essence of the contract, such [a] provision may be waived by the conduct of the party for whose benefit the stipulation is made.”
 
 Thompson v. Thompson,
 
 257 Ala. 10, 13, 57 So.2d 393, 395 (1952);
 
 see also Nelson v. Vick,
 
 462 So.2d 935, 937-38 (Ala.Civ.App.1984) (recognizing rule in affirming trial court’s judgment in which sellers were found to have waived strict compliance with land-sale contract provisions regarding time for buyer’s payment of purchase-money installments). In this case, Jones conveyed Lot 2-B, to a corporation under Wilson’s control, less than two months after the expiration of the period
 
 *855
 
 in which the parties to the contract had originally intended that conveyance to take place. Moreover, when the right of first refusal as to Lot 2-A was brought to Jones’s attention more than a year after Lot 2-B had been conveyed, Jones sent Wilson a letter that, by its terms, was intended as a “notice of [that] right of first refusal” and that requested Wilson to exercise that right in accordance with the terms of the contract. As this court noted in
 
 Massey v. Jackson,
 
 726 So.2d 656, 659 (Ala.Civ.App.1998), “[w]hether a party has waived strict compliance with the terms of a contract is a question of fact.” Viewing the record evidence in a light most favorable to Wilson, as we must, we conclude that there is substantial evidence from which a jury could properly conclude that Jones waived the closing-deadline and time-is-of-essence provisions of the August 28, 2003, contract that had benefited Jones alone or both Jones and Wilson mutually.
 

 The trial court also concluded, and Jones and Starr also contend, that Wilson had no standing to assert any right of first refusal because Jones conveyed Lot 2-B to Affordable rather than Wilson. However, the August 28, 2003, contract contains no provision that would have expressly required Jones to deed the property
 
 only
 
 to Wilson. Generally, when a party is entitled to a conveyance of real property under a written instrument, but directs the titleholder of that property to convey the property to a third person, the titleholder, by doing as directed, has fully performed under the instrument.
 
 See Burt v. Henry,
 
 10 Ala. 874, 883 (1846);
 
 see also Atkinson v. St. Matthias Church,
 
 217 Mich. 204, 209, 185 N.W. 713, 714 (1921) (land contract between purchaser and vendor “did not stand in the way of’ purchaser’s consenting that title be conveyed to third party);
 
 Mallin v. Good,
 
 93 Ill.App.3d 843, 848, 49 Ill.Dec. 168, 172, 417 N.E.2d 858, 862 (1981) (purchasers of real property remained in contractual privity with sellers even after property was deeded at purchasers’ request to a third-party nominee). That Affordable was deeded Lot 2-B does not, ipso facto, render it and not Wilson the proper party to enforce a breach of the August 28, 2003, agreement between Wilson and Jones.
 

 Jones and Starr contend, however, that the contract for purchase, including its right of first refusal, was destroyed by virtue of the doctrine of merger by deed. Properly understood, the merger doctrine provides that in the ordinary ease, “in the absence of fraud or mistake, when a contract to convey has been consummated by execution and delivery of a deed, the preliminary contract becomes functus offi-cio, and the deed becomes the sole memorial of the agreement, and upon it the rights of the parties rest.”
 
 Ridley v. Moyer;
 
 230 Ala. 517, 520, 161 So. 526, 528 (1935). However, it is well settled that “there are cases in which certain preliminary stipulations, such as are
 
 independent and collateral
 
 and not such preliminary agreement as would be merged in the conveyance, survive the deed and confer independent causes of action.”
 
 Id.
 
 (emphasis added);
 
 Rickenbaugh v. Asbury,
 
 28 Ala.App. 375, 380, 185 So. 181, 184 (1938) (execution, delivery, and acceptance of deed did not destroy the obligation of the purchaser under the contract of sale to supply water to the seller for domestic purposes). A preemptive right of first refusal such as appears in the August 28, 2003, agreement, which is triggered when Jones “shall receive from a third party
 
 at any time
 
 ” an offer to purchase Lot 2-A and agree to sell Lot 2-A, is properly viewed as an independent and collateral agreement that survives the deed to Lot 2-B.
 
 See Stoneburner v. Fletcher,
 
 408
 
 *856
 
 N.E.2d 545, 549 (Ind.Ct.App.1980) (preemptive right to purchase adjoining lot survived conveyance of principal property);
 
 Landa v. Century 21 Simmons & Co.,
 
 237 Va. 374, 384, 377 S.E.2d 416, 421 (1989) (right of first refusal as to particular tract in contract to convey other tract “remained executory and survived the deed”);
 
 see also Winberg v. Cimfel,
 
 248 Neb. 71, 79, 532 N.W.2d 35, 40-41 (1995).
 

 Because substantial evidence would warrant a conclusion that Jones breached a valid right of first refusal held by Wilson as to Lot 2-A, we must conclude that the trial court erred in entering its summary judgment as to Wilson’s breach-of-contract claim against Jones. In so concluding, we emphasize that by no means do we hold that Wilson must necessarily prevail at trial on his claim, only that he is entitled to a trial.
 

 We reach a different result, however, with respect to Wilson’s intentional-interference claim against Starr. That claim, as Wilson notes in his brief, requires proof of five elements:
 

 “1) the existence of a contract or business relation; 2) the defendant’s knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant’s interference; and 5) damage to the plaintiff as a result of the interference.”
 

 Soap Co. v. Ecolab, Inc.,
 
 646 So.2d 1366, 1371 (Ala.1994). The second of those elements amounts to a significant barrier to Wilson’s claim against Starr in this case; no evidence has been adduced indicating that, at the time that Jones deeded Lot 2-A to Starr, Starr had any knowledge of Wilson’s right of first refusal. In perhaps a tacit acknowledgment of that lack of knowledge, Wilson contends on appeal that Starr’s conduct
 
 after
 
 becoming aware of the right of first refusal — recording the deed to Lot 2-A and failing to adhere to the alleged oral agreement — will support an intentional-interference claim.
 

 Wilson’s contentions are unsound. The sole “damage” Wilson claims in his appellate brief to have flowed from Starr’s actions is limited to an infringement of Wilson’s right to purchase and hold Lot 2-A in accordance with the first-refusal provisions of the August 28, 2003, contract. However, that damage was, as a matter of law, incurred when Jones executed and delivered the deed to Lot 2-A in exchange for Starr’s payment of the agreed purchase price so as to give Starr a colorable ownership interest in Lot 2-A, not when Starr gave notice via recordation of the existence of that interest. It is well settled that Alabama’s recording statute “does not render void an unrecorded deed except for the benefit of those particular classes of persons named in the statute”
 
 (Murphree v. Smith,
 
 291 Ala. 20, 24, 277 So.2d 327, 329 (1973)),
 
 i.e.,
 
 “purchasers for a valuable consideration, mortgagees and judgment creditors without notice.” Ala. Code 1975, § 35-4-90(a). Because there is no issue in this case concerning any mortgagees or judgment creditors of Jones and no indication that any other person has purchased Lot 2-A from Jones after Starr, Starr’s recording of the deed to Lot 2-A gave the conveyance no more validity than it had before its recordation and had no legal effect upon Wilson’s interests. Similarly, because oral contracts to convey real property are void unless all or part of the purchase price has been paid by, and possession has been transferred to, the purchaser
 
 (see
 
 Ala.Code 1975, § 8 — 9—2(5)), Starr’s refusal to be bound by any executo-ry oral agreement to convey Lot 2-A that may have been reached by his and Wilson’s attorneys amounts to nothing more than an exercise of Starr’s legal rights to
 
 *857
 
 deem the agreement void rather than an actionable interference in the contractual relations of Wilson and Jones.
 
 See Tom’s Foods, Inc. v. Carn,
 
 896 So.2d 443, 455 (Ala.2004). We thus conclude that the summary judgment as to Wilson’s claim against Starr was correctly entered.
 

 Having determined that the trial court correctly entered the summary judgment as to Wilson’s claims against Starr, we must now consider Starr’s appeal from the summary judgment as to his claims against Wilson asserted in his counterclaim. As we have noted, the trial court determined that those claims, which consisted of an ALAA claim, a claim of intentional interference with business or contractual relations, and a claim of slander of title, were to be summarily adjudicated as being “moot.” Although that court subsequently purported to enter an order vacating its judgment as to Starr’s claims, it did so outside its jurisdiction.
 

 Starr correctly notes that a “moot” case is one that leaves nothing for the court to decide,
 
 i.e., “ ‘
 
 “a case which seeks to determine an abstract question which does not rest on existing facts or rights, or involve conflicting rights so far as plaintiff is concerned.” ’ ”
 
 Chapman v. Gooden,
 
 974 So.2d 972, 983 (Ala.2007) (quoting
 
 Case v. Alabama State Bar,
 
 939 So.2d 881, 884 (Ala.2006), quoting in turn
 
 American Fed’n of State, County & Mun. Employees v. Dawkins,
 
 268 Ala. 13, 18, 104 So.2d 827, 830-31 (1958)). In this case, Starr’s ALAA claim against Wilson might have been rendered moot had the trial court, or this court on review, explicitly or implicitly determined that Wilson’s claims against Starr in this case were not brought without substantial justification in fact or law, thereby failing the condition set forth in the ALAA to affix liability upon a litigant
 
 (see generally
 
 Ala.Code 1975, §§ 12-19-271 and 12-19-272). Because the issue whether Wilson, without justification, brought his claims against Starr in this action remains undecided, however, there remains a “conflict” as to Starr’s and Wilson’s “existing rights” to be resolved by the trial court. Similarly, the trial court’s determination that Starr is entitled to a judgment as a matter of law as to Wilson’s claim does not prevent Starr from prevailing on his slander-of-title and intentional-interference claims against Wilson; those claims are in no way contingent upon the validity of any other claim asserted in the case. We thus agree with Starr that the trial court erred in entering the summary judgment as to Starr’s claims against Wilson.
 

 For the foregoing reasons, in case no. 2070731 (Wilson’s appeal), we affirm the summary judgment as to the intentional-interference claim against Starr, but we reverse that judgment as to the breach-of-contract claim against Jones. In case no. 2070281, we reverse the trial court’s summary judgment, entered on the ground of mootness, as to Starr’s claims against Wilson; Wilson’s motion to strike and dismiss is denied. The cause is remanded for further proceedings consistent with this opinion.
 

 2070281 — REVERSED AND REMANDED.
 

 2070731 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Although Rule 13(f), Ala. R. Civ. P., appears to require leave of court to assert a counterclaim omitted from a defendant's answer, Rule 15(a), Ala. R. Civ. P., permits amendment of any pleading as of right on or before the 42d day before the first setting of a case for trial; because the case had not been set for a trial at the time Starr filed his counterclaim, Rule 15(a) may properly be said to prevail over Rule 13(f) here so as to render the counterclaim proper without leave of court.
 
 See
 
 1 Champ Lyons, Jr., & Ally W. Howell,
 
 Alabama Rules of Civil Procedure Annotated
 
 § 15.3 (2004).
 

 [2]
 

 .
 

 "A 'right of first refusal' is a conditional option empowering its holder with a preferential right to purchase a property on the same terms offered by or to a bona fide purchaser. It is known more technically as a ‘preemptive option,’ as a ‘right of preemption,’ or simply as a ‘preemption’ and is a right to buy before or ahead of others.”
 

 77 Am Jur.2d
 
 Vendor & Purchaser
 
 § 34 (2006) (footnotes omitted).