MURDOCK, Justice.
This case concerns the applicability of the doctrine of merger to a deed executed *310 and delivered in satisfaction of the grant- or’s obligations under a residential sales agreement. Sammy Thomas and Pam Thomas appeal from the Blount Circuit Court’s order granting a motion to compel arbitration filed by Sloan Homes, LLC (“Sloan Homes”), David Sloan, and Teresa Sloan in the Thomases’ action alleging breach of contract and tortious conduct in relation to the construction of a house by Sloan Homes, the grantor under the residential sales agreement. The question presented by this appeal is whether, under the doctrine of merger, the execution and delivery of the deed in this case nullified an arbitration clause included in the antecedent residential sales agreement.

I. Facts and Procedural History

On October 13, 2007, the Thomases entered into what appears to be a standard form “General Residential Sales Contract” with Sloan Homes (“the sales contract”) for the purchase of a residence, the construction of which by Sloan Homes was nearing completion. The sales contract contained an arbitration clause that provided as follows:
“MEDIATION AND ARBITRATION/WAIVER OF TRIAL BY JURY: All claims, disputes or other matters in question arising out of or relating in any way to this Contract or the breach thereof, including claims against any broker or sales associate, or relating to the relationship involved with, created by or concerning this Contract, including the involvement of any broker or sales associate (‘Claim’), shall be submitted to mediation with a mutually agreed upon mediator within forty-five (45) days of notice of the Claim. In the event no mediation resolution is reached within sixty (60) days of the party’s notice of the Claim, all Claims shall be resolved by binding arbitration by a single arbitrator in Birmingham, Alabama in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect. EACH PARTY ACKNOWLEDGES THAT HE OR SHE IS KNOWINGLY WAIVING THE RIGHT TO A TRIAL BY JURY RELATING TO ALL CLAIMS. All disputes concerning the arbitrability of any Claim or the enforceability or scope of this provision shall be subject to the same binding arbitration. The parties shall bear equally the cost of the arbitrator and each party shall otherwise bear their own costs; provided the arbitrator shall have the authority to award costs as a part of this award to the extent authorized by applicable law. The arbitrator shall follow the law applicable to any Claim and shall be empowered to award any damages or other relief which would be available under the law applicable to any such Claim. The determination of the arbitrator shall be final, binding on the parties and nonap-pealable, and may be entered in any court of competent jurisdiction to enforce it. The parties acknowledge and agree that the transactions contemplated by and relating to this Contract, which may include the use of materials and components which are obtained from out-of-state and which otherwise include the use of interstate mails, roadways and commerce, involve interstate commerce, as that term is defined in the Federal Arbitration Act, 9 U.S.C. § 2.”
(Capitalization in original; emphasis added.) [1]
*311 The sales contract also contained a section with a choice of boxes to be “checked” to indicate whether the seller “does” or “does not” agree to provide a “Home Warranty Policy” that would be “effective for one year from the date of closing.” Neither box was checked. In the space immediately above this section, however, was the following handwritten statement: “1 years [sic] Builders Warranty.” On October 15, 2007, the parties signed an addendum to the sales contract that set forth certain items that were to be completed in a specified manner as it related to construction of the house.
On November 7, 2007, the Thomases and Sloan Homes “closed” the sale of the house; a general warranty deed was executed and delivered to the Thomases. The deed contained only those provisions as are characteristic of and common to general warranty deeds, including, for example, a description of the property, a recitation of the purchase price, language of conveyance describing the nature of the estate conveyed, and covenants and warranties pertaining to the quality of title held by the grantor and conveyed to the grantees. The deed made no mention of the sales contract and contained none of the other terms that were in the sales contract, including the arbitration clause.
At the closing, the Thomases also were provided a separate written “Limited New Home Warranty” (“the home warranty”) from Sloan Homes as the “builder.” The home warranty provided that Sloan Homes warranted the Thomases’ house “to be free from latent defects for a period of one (1) year following closing or occupancy, whichever event shall occur first.” The home warranty expressly stated that “[t]his warranty is given in lieu of any and all other warranties either express or implied, including any implied warranty of merchantability, fitness for a particular purpose, habitability and workmanship....”[2] Like the warranty deed, the home warranty did not contain an arbitration clause.
On November 6, 2009, the Thomases filed an action in the Blount Circuit Court against Sloan Homes and the owners of Sloan Homes, David and Teresa Sloan. The Thomases alleged the following claims in their complaint: breach of the home warranty; breach of the implied warranty of merchantability, fitness for a particular purpose, and habitability; negligent/wanton failure to warn; “negligent/wanton development,” i.e., developing a residential subdivision on land not suitable for that purpose; negligent/wanton construction; suppression; and breach of contract in failing to construct the house in a workmanlike manner. The gist of their complaint was that Sloan Homes built the house purchased by the Thomases in an area that previously had flooded and that had “water problems.” The Thomases alleged that Sloan Homes and the Sloans knew about the flooding and water problems but failed to inform the Thomases of this information before they entered into the sales contract and before the closing at which the property was actually conveyed *312 to the Thomases. They also alleged that despite knowing of the flooding and water problems, Sloan Homes failed to build their house in a manner that would compensate for potential water and moisture problems. The Thomases’ alleged that, as a result, the house had sustained severe water and moisture damage that would cost a large amount to repair and that diminished the value of the house and that the damage to the house rendered it uninhabitable.
Sloan Homes and the Sloans answered the complaint on December 8, 2009. On September 28, 2010, Sloan Homes and the Sloans filed a motion to compel arbitration, attaching the sales contract to the motion and citing the arbitration clause contained in that contract. On November 10, 2010, the Thomases filed their response and opposition to Sloan Homes and the Sloans’ motion, attaching to their response the warranty deed and the home warranty and noting the lack of an arbitration clause in either document.
On November 15, 2010, the circuit court entered an order granting the motion to compel arbitration. In its order, the circuit court did not provide reasons for granting the motion. The Thomases appeal from the order granting the motion to compel arbitration.

II. Standard of Review

“ ‘This Court’s review of an order granting or denying a motion to compel arbitration is de novo. First American Title Ins. Corp. v. Silvernell, 744 So.2d 883, 886 (Ala.1999); Crimson Indus., Inc. v. Kirkland, 736 So.2d 597, 600 (Ala.1999); Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171 (Ala.1999).’
“United Wisconsin Life Ins. Co. v. Tankersley, 880 So.2d 385, 389 (Ala.2003). Furthermore:
“ ‘ “A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. ‘After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.’ ”
“ ‘Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted)).’
“Vann v. First Cmty. Credit Corp., 834 So.2d 751, 753 (Ala.2002).”
Cartwright v. Maitland, 30 So.3d 405, 408-09 (Ala.2009).

III. Analysis

The Thomases do not dispute that the sales contract contains an arbitration clause or that the sales contract evidences a transaction affecting interstate commerce. The sole issue presented by this appeal is whether the doctrine of merger operates to nullify the arbitration clause in the sales contract. Specifically, the Thomases rely on the fact that the deed delivered to them at the closing on the sale of the house contained no arbitration provision, and they cite Russell v. Mullis, 479 So.2d 727 (Ala.1985), for the following proposition:
“Under the doctrine of ‘merger,’ ordinarily, in the absence of fraud or mistake, when a contract to sell and convey real estate has been consummated by *313 the execution and delivery of a deed, ... the preliminary contract becomes func-tus officio, and the deed becomes a sole memorial of the agreement, and upon it the rights of the parties rest....”
479 So.2d at 730. We reject the Thom-ases’ merger argument.
As the Court of Civil Appeals observed in the relatively recent case of Brogden v. Durkee, 16 So.3d 113, 115 (Ala.Civ.App.2009):
“ ‘[I]t is well settled that “there are cases in which certain preliminary stipulations, such as are independent and collateral and not such preliminary agreement as would be merged in the conveyance, survive the deed and confer independent causes of action.” ’ Starr v. Wilson, 11 So.3d 846, 855 (Ala.Civ.App.2008) (quoting Ridley v. Moyer, 230 Ala. 517, 520, 161 So. 526, 528 (1935)); see also Rickenbaugh v. Asbury, 28 Ala.App. 375, 380, 185 So. 181, 184 (1938) (holding that a seller’s obligation, under a real-estate sales contract, to provide water for domestic purposes did not merge into the deed).”
The limitation of the merger doctrine has been further explained as follows:
“The real merger-exception rule in the sale of realty is that ‘where the antecedent contract contains provisions imposing obligations upon the vendor other than those relating to title or possession, and ... collateral thereto ... such collateral provisions will be held to survive the deed.’ Where the antecedent contract contains an agreement to build, repair or construct as well as an agreement to convey, it is too plain to debate that the actual transfer of the deed (which passes only legal title) is ‘only a part performance of the provisions of the antecedent ... contract,’ and that the agreements to build or construct ‘come under the collateral agreement theory’ and hence are clearly exempted from the operation of merger in the first place. The practice of calling such a dual-purpose antecedent contract a mere ‘sales contract,’ so as to effect its entire merger into the deed, ignores the true nature of the agreement and ignores modern business reality with the result of substantial injustice to uncounted home buyers in this state.
“The rational basis for the merger rule is that where parties enter into a final contract all prior negotiations, understandings and agreements ‘on the same subject’ are merged into the final contract, and are accordingly extinguished .... [W]here the antecedent contract or contracts clearly provide for agreements or stipulations to build or construct as well as an agreement to convey, it is plain that the actual transfer of the deed, which is performance only of the agreement to convey, does not extinguish any duties and obligations arising out of the agreement to build.”
Holmes v. Worthey, 159 Ga.App. 262, 266-67, 282 S.E.2d 919, 923 (1981) (citations and emphasis omitted). See also Davencourt at Pilgrims Landing Homeowners Ass’n v. Davencourt at Pilgrims Landing, LC, 221 P.3d 234, 254 (Utah 2009) (stating that “ ‘[t]he doctrine of merger ... is applicable when the acts to be performed by the seller in a contract relate only to the delivery of title to the buyer’ ” and that “collateral acts to the conveyance of title by the seller ‘survive the deed and are not extinguished by it’” (quoting Stubbs v. Hemmert, 567 P.2d 168, 169 (Utah 1977))).
To the extent that disputes regarding the manner and quality of the construction of the home purchased by the Thomases was governed by the arbitration clause in the sales contract at issue, the rights and obligations of the parties under this clause were not altered by the deliv *314 ery of an ordinary warranty deed and the conveyance of title accomplished thereby. The merger doctrine does not in this case extinguish the arbitration clause any more than it extinguishes other “collateral agreements” found in the sales contract.[3]

IV. Conclusion

Based on the foregoing, we affirm the circuit court’s order granting Sloan Homes and the Sloans’ motion to compel arbitration of the Thomases’ claims.
AFFIRMED.
MALONE, C.J., and WOODALL, BOLIN, and MAIN, JJ., concur.

. The "General Residential Sales Contract” at issue here had as its focus the sale of a residence by one party to another; except for certain items to be completed before closing as described in an addendum to the sales contract (see infra), this sales contract by its terms was not concerned with the construction of the residence. Nonetheless, the argu *311 ment presented to this Court by the Thomases contemplates that, but for the contended-for application of the merger doctrine, the arbitration clause in this contract would be applicable to their claims relating to the alleged defects in the construction of their house. Whether that is correct is not an issue that has been presented to us in this appeal and, therefore, is not an issue that we address.

. In Morris v. Strickling, 579 So.2d 609 (Ala.1991), this Court noted that in Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971), the Court held that "the rule of caveat emptor would no longer be applicable to the sale of a newly constructed house, and recogniz[ed] an implied warranty of fitness and habitability with regard to such sales.” 579 So.2d at 610.

. The Thomases also assert that the separate written warranty provided to them by Sloan Homes at the closing, which as noted also did not contain an arbitration clause, operated to nullify the arbitration clause in the sales contract; however, the Thomases provide no discussion or authority in support of this assertion. This Court has no obligation to perform the parties’ research or to craft arguments for the parties. See Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994).